[L. A. No. 82. Department Two.—March 24, 1896.]

## JAMES T. DUNN, APPELLANT, *v.* CHARLES PRICE ET AL., RESPONDENTS.

CONDITIONAL SALE OF PERSONAL PROPERTY—ASSIGNMENT BY VENDOR—POWER OF ATTORNEY—PASSAGE OF TITLE—STRANGER TO CONTRACT.—Where the owner of personal property has made a conditional sale thereof, reserving the title in himself, until full payment of the purchase money, for which he has received a note, a mere assignment of the contract of sale to a trust company, with power to fulfill the contract, and to collect all money thereon, without making to it any transfer of the note, or any bill of sale of the property, is in the nature of a power of attorney, and does not pass title of the property to the trust company, or authorize it to sell or transfer the property to a third person, and such third person is not a party or privy to the contract of sale, but is a stranger thereto.

ID.—EVIDENCE—ORAL AGREEMENT WITH ONE VENDEE—PAROL EVIDENCE AGAINST STRANGER.—A stranger to a written instrument cannot invoke the rule that parol testimony cannot be given to vary or contradict the terms of the instrument; and, as against a stranger to a written contract of conditional sale made to three persons, in which title was reserved to the vendor until full payment of purchase money, it may be shown by one of the vendees that he had an oral agreement with the vendor that if he made one-third of the payment of the purchase money he should have one-third of the property, and that such oral agreement had been fully performed on his part.

ID.—ORAL MODIFICATION OF WRITTEN CONTRACTS.—A contract in writing may be altered by an executed oral agreement, and evidence is admissible to show such an executed agreement and the circumstances attending it.

ID.—CONSIDERATION OF RELEASE AND TRANSFER—QUESTION OF LAW.—When it appears that plaintiff accepted a release and transfer from two of the vendees, it is competent for the third vendee to show, as against the vendor, what was the consideration of such release and transfer, the effect thereof upon the third vendee being a question of law.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. J. W. McKINLEY, Judge.

The facts are stated in the opinion.

*William T. Kendrick,* for Appellant.

The court erred in admitting evidence of the oral agreement made contemporaneously with the written agreement between Howard and J. A. Brainard, as it was contradictory to the terms of the written agree-

ment. (Civ. Code, sec. 1625; Code Civ. Proc., sec. 1856; *West Coast Lumber Co.* v. *Apfield*, 86 Cal. 340; *Storch* v. *McCain*, 85 Cal. 304; *Mason* v. *Wolff*, 40 Cal. 246; *Salinas City Bank* v. *De Witt*, 97 Cal. 78.)

*W. B. Mathews*, and *Walter Bordwell*, for Respondents.

As between a party to an instrument and a stranger to it, either may give testimony differing from its contents. (*McMaster* v. *Insurance Co. of North America*, 55 N. Y. 222; 14 Am. Rep. 239; *Brown* v. *Thurber*, 77 N. Y. 613; *Lowell Mfg. Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y. 591; *Lee* v. *Adsit*, 37 N. Y. 78; *Darby* v. *Arrowhead Hot Springs etc. Co.*, 97 Cal. 384.)

BELCHER, C.—This is an action to recover the possession or value, alleged to be four hundred and sixteen dollars, of four horses and two sets of harness, with damages for the detention thereof. The answer denied that the plaintiff was the owner or entitled to the possession of the described property, or of any part thereof, at the time of the commencement of the action or at any time prior thereto, and denied that defendants had ever unlawfully withheld or detained said property, or any of the same, from the possession of the plaintiff.

The case was tried by the court without a jury, and the findings were that the plaintiff was not, at any of the times mentioned in the complaint or at the commencement of the action, the owner of or entitled to the possession of the property described in the complaint, or of any part thereof.

Judgment was accordingly entered that the plaintiff take nothing by the action. A motion for new trial was subsequently made upon a bill of exceptions and denied, and from that order this appeal is prosecuted.

The bill of exceptions contains no specifications that the findings were not justified by the evidence, and the only points made for a reversal are that the court erred in certain rulings upon the admission of evidence.

It appears from the record that on September 16,

1890, W. W. Howard, as party of the first part, entered into a written agreement with L. W. Weller, W. B. Brainard, and J. A. Brainard, as parties of the second part, whereby he agreed to sell to them, and they agreed to buy of him, a large amount of personal property, including that described in the complaint. The price to be paid was thirteen hundred and sixty-six dollars and ten cents, for which a promissory note was given payable three months after date, with interest at the rate of two and one-half per cent per month. The agreement provided that "the title of all the aforesaid personal property shall be and remain in and belong to the said party of the first part, until the aforesaid payments of said promissory note have been made in full"; and " that any sum or sums of money that the parties of the second part shall pay to the party of the first part upon the aforesaid note, before final payment thereof, shall be considered and treated as rent for the use of the aforesaid personal property, which the first party may give to them, until the whole of said note has been paid, and that, on the full and complete payment of said note, the party of the first part will make, execute, and deliver to the parties of the second part a good and sufficient bill of sale of the aforesaid personal property, and deliver to them the absolute and unconditional possession thereof; and the parties of the second part hereby agree that they will give, as security that they will purchase and pay for all the aforesaid personal property in the manner hereinbefore described, a crop mortgage on all crops and grain put in by them in Los Angeles county, during the winter and spring of 1890 and 1891, as soon as said crops are planted."

Attached to this agreement was an assignment thereof made by Howard and dated October 30, 1891, in these words:

"For a valuable consideration in hand paid, I hereby sell, assign, transfer, and set over to California Loan & Trust Company all my right, title, and interest in and to the within agreement, and authorize and empower

and direct the California Loan & Trust Company to fulfill all agreements therein, and collect all money thereon, and do all other acts and things as fully as I might or could do."

On August 26, 1892, the California Loan & Trust Company executed to J. T. Dunn, the plaintiff, a bill of sale of all the property described in the said agreement, and on the next day he entered into a new agreement with said L. W. Weller, W. B. Brainard, and J. A. Brainard whereby he agreed to sell to them, and they to buy of him, all of the said property for the sum of one thousand dollars, for which a note was given, payable three months after date, with interest at the rate of ten per cent per annum, and which was to be secured by a crop mortgage on all crops and grain put in by them in Los Angeles county during the winter and spring of 1892 and 1893, as soon as crops are planted. This agreement contained the same provisions in regard to the title, the advance payments, and the making a bill of sale, etc., as those above quoted from the agreement made by Howard. Indorsed upon this agreement, under date of October 12, 1893, was a release by L. W. Weller and W. B. Brainard to James T. Dunn from all his obligations to them under the said agreement, and a transfer by them to him of all their interest in or to the property described in the said agreement.

The only right or title to the property in controversy, shown to be in the plaintiff, was such as he acquired through the assignment of the Howard contract to the California Loan & Trust Company, and the bill of sale of the company to him. And the only title to the said property, shown to be in defendants, was such as they acquired by a purchase thereof from J. A. Brainard.

George Price, one of the defendants, testified that he bought the horses of J. A. Brainard in October, 1893, and gave to W. W. Howard a mortgage thereon for the full purchase price, and also a crop mortgage for the same debt, which Howard still held at the time of the trial in January, 1894.

J. A. Brainard testified that the only title he ever had to the property he acquired from W. W. Howard. He was then asked by counsel for defendants, and answered, the following questions:

"Q. Was there any understanding or agreement between you and Mr. Howard at the time you executed that contract, with reference to your paying any portion of it? A. Yes, sir, there was."

"Q. State what that agreement was. A. When Mr. Howard had the contract drawn up, or was going to draw it up, I told him I would not sign the contract unless if either one paid his own one-third he was to have one-third of the stuff clear, and Mr. Howard said that was all right. I made this statement to him for my benefit only."

"Q. Did you subsequently make any payment to Mr. Howard on that contract? A. I paid Mr. Howard five-hundred and eighty-five dollars as one-third of the note. That was about one year from the time we dissolved."

"Q. At the time you signed that contract did Mr. Howard agree that if you paid one-third of the purchase price you should have one-third of the stock and the property released to you? A. He did. This five hundred and eighty-five dollars which I paid Howard was one-third of the amount that was at that time due on the contract."

W. B. Brainard testified in reference to the release indorsed upon the plaintiff's agreement or contract, under date of October 12, 1893. He was asked by counsel for defendant:

"Q. What was the consideration for the execution of this instrument? A. The consideration for the execution of the instrument was J. T. Dunn's agreement with us at the time of the execution to release myself and L. W. Weller from all obligations under our agreement to purchase the horses described in the complaint, and the other property described in the agreement."

The above questions were severally objected to by

counsel for plaintiff, upon the ground that they were incompetent, irrelevant, and immaterial, and the objections were overruled.

These rulings constitute the errors complained of, and upon which the plaintiff relies for a reversal of the order appealed from.

It is claimed that the answers to the first four questions were improperly admitted, because the object and effect of the evidence was to vary and supersede the terms of a written agreement by a contemporaneous oral agreement concerning the same matter, which is inhibited by section 1625 of the Civil Code, and section 1856 of the Code of Civil Procedure.

The sections referred to read as follows:

"SEC. 1625. The execution of a contract in writing, whether the law requires it to be in writing or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

" SEC. 1856. When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and, therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of agreement other than the contents of the writing," etc.

It will be observed that the rule thus declared applies only as between the parties to the instrument and their representatives or successors in interest. It cannot be invoked by strangers to the instrument. "The rule that parol testimony may not be given to contradict a written contract applies only in suits between the parties to it or their privies. In a contention between a party to an instrument and a stranger, either can give parol testimony differing from the contents of the instrument." (*McMasters* v. *Insurance Co. of North America*, 55 N. Y. 222; 14 Am. Rep. 239; *Lowell Mfg. Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y. 591; *Darby* v. *Arrowhead etc. Co.*, 97 Cal. 384.)

The evidence objected to was evidently admitted upon the theory that the plaintiff was not shown to be the representative or successor in interest of Howard, as to the property involved in this action; and this theory, so far as we can discover from the record, was very clearly tenable.

Howard must be presumed to have owned the property which he contracted to sell by his agreement of September 16, 1890. The assignment of that agreement to the California Loan & Trust Company did not purport to transfer the title to any of the property described, but, in effect, seems to have been only a power of attorney authorizing the company to carry out the contract and to collect the money that would become due thereon, and then execute a bill of sale to the purchasers. The note does not appear to have been assigned, and it must have been intended that the money, when collected, should be paid over to Howard. And that this must have been so is further shown by the fact that Howard afterward received from J. A. Brainard one-third of the amount due on the note, and also, as late as October, 1893, received from the defendants a mortgage on the horses and a crop mortgage to secure their purchase price. No authority is shown in the trust company to sell the property to any third party, and under these circumstances the court below might properly have concluded that the bill of sale from the company to the plaintiff passed no title and was without effect.

Besides, section 1698 of the Civil Code provides that "a contract in writing may be altered by a contract in writing, or by an executed oral agreement." Here it appears that the oral agreement between Howard and Brainard was executed, and the evidence as to the circumstances attending it was therefore properly admitted.

The last question objected to was neither irrelevant nor incompetent. Plaintiff having accepted a release and transfer from L. W. Weller and W. B. Brainard, it was proper to show what was the consideration for that

release and transfer. It may be, as claimed, that J. A. Brainard was not thereby released from any of his obligations, but that was a question of law.

We see no prejudicial error in any of the rulings complained of, and advise that the order appealed from be affirmed.

BRITT, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.