## O'SHEA v. NEW YORK, C. & ST. L. R. CO.

### (Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

### No. 653.

1. RELEASE—JOINT TORT FEASORS.

The legal effect and operation of a release declaring that a person injured by the joint negligence of two railroad companies has received full settlement from one of them for all his injuries resulting from the accident in question is not affected by an expression therein excepting the other company.

2. EVIDENCE—CONTRADICTING WRITTEN INSTRUMENT—RELEASE.

While one of two joint tort feasors can avail himself of a release of the other, and is therefore not a stranger to the release to that extent, he is a stranger to the instrument in the sense in which the term is used in the rule that in a suit between a party to a contract and a stranger thereto neither is concluded by the writing, but either may contradict it by parol evidence.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

Action by John W. O'Shea against the New York, Chicago & St. Louis Railroad Company. A verdict was directed for defendant, and plaintiff brings error. Reversed.

The plaintiff in error, who was the plaintiff below, brought suit to recover for injuries received while in the service of the defendant, the New York, Chicago & St. Louis Railroad Company, owning and operating a railroad commonly known as the "Nickel Plate Railroad." At the time of the accident, December 29, 1894, the plaintiff was riding upon one of the engines of the Nickel Plate Company, which was being run over the tracks of the Chicago, Burlington & Quincy Railroad Company. The latter company had erected a tower post in close proximity to the track, and as the engine passed this post the plaintiff was struck thereby and injured. The immediate cause of the accident was the dangerous proximity of the post to the track, and the action proceeds upon the theory that, while the Chicago, Burlington & Quincy Railroad Company was primarily responsible, yet the defendant, the Nickel Plate Railroad Company, was also liable to him for the injury, in that it negligently allowed its engine to be operated upon tracks dangerous because of the proximity of the tower post. In addition to a plea of not guilty, the defendant filed a further plea that on the 23d of March, 1895, the plaintiff made claim against the Chicago, Burlington & Quincy Railroad Company for his injuries, sustained by the joint negligence of the defendant and the Chicago, Burlington & Quincy Railroad Company, that such claim was duly paid and satisfied by that company, and that the plaintiff executed and delivered to that company a release and satisfaction for the claim, which is set out in hæc verba in the plea and is herein set forth at large. At the trial the supposed satisfaction or release was offered in evidence. It was upon the ordinary blank used by that company, and the following is a facsimile of the original, the words erased being in print, and the words substituted and interlined being typewritten, the body of the document, stating the character of the claim and the amount received, being also typewritten: "Form 1,646.

"The Chicago, Burlington & Quincy Railroad Company to J. W. O'Shea, Dr. 7429 Ellis Ave., Chicago, Ills.

"For amount agreed upon in full settlement of all claim, demands, or causes of action whatsoever which J. W. O'Shea may have or ever has had against the Chicago, Burlington & Quincy Railroad Company (but not the New York, Chicago & St. Louis Railroad Company) account of or growing out of an accident which occurred at or near Loomis St. crossing of said railroad company's tracks, Chicago, Ill., on or about December 29th, 1894, at which time,

while on duty as switchman on a N. Y., C. & St. L. train, said O'Shea was supposed to have been struck and injured by post of gate tower.

"In full settlement for any and all injuries resulting from said accident ........................................................ $1,200 00

"Received of the Chicago, Burlington & Quincy Railroad Company twelve hundred and 00/100 dollars, in full payment of the above account. In consideration of the payment of said sum of money, I, J. W. O'Shea, of Chicago, in the county of Cook and state of Illinois, hereby remise, release, and for- ever discharge the said company of and from all manner of actions, causes of action, suits, debts, and sums of money, dues, claims, and demands whatsoever, in law or in equity, which I have, ever had, or now have, against said company, by reason of any matter, cause, or thing whatever, whether the same arose upon contract or upon tort.

"In witness whereof I have hereunto set my hand and seal this 23 day of March, 1895.

"[Signed]            J. W. O'Shea. [L. S.]"

Under objection and exception, the court allowed parol evidence of the negotiations which led up to the written agreement and of the actual agreement said to have been made. The testimony of the plaintiff, of Mr. Connell, the attorney, and Mr. Delano, the superintendent of freight terminals, of the Chicago, Burlington & Quincy Railroad Company, is substantially concurrent to the following effect: That the plaintiff applied to Mr. Delano to know what damages the company would pay or what they were prepared to do for him. At first Mr. Delano sought to induce him to make a settlement with the company which employed him, but the plaintiff persisted in desiring to know what the Chicago, Burlington & Quincy Railroad Company would do for him, and he finally proposed that that company should pay him a sum of money, but that he would sign no release of any kind for it. After consultation with other officers of the company, Mr. Delano told him that the company would pay him $1,200. What followed is thus stated by Mr. Delano: "He said he wouldn't sign a receipt of any kind for that money which didn't leave him free to sue, I think was his expression, the Nickel Plate Company; and I told him that our counsel was willing to give him the money on that understanding, and the last conversation I had with him prior to the final making out of the papers was to make an appointment with him to meet him on a certain day, and go with him to our general counsel's office, and there the money would be paid to him; and that time I gave him a copy of the standard form on which receipts are taken for money paid in that way, so that he might understand the thing, and know what he would be expected to sign when he came to the final meeting. He brought the form which I had let him have, and had made changes on it. Those changes were accepted by our attorney." The plaintiff and Mr. Delano then repaired to the office of the general counsel of the company, where they met Mr. Dawes, the general counsel, and Mr. Connell, the attorney, where, the plaintiff objecting to a form of instrument presented, but which does not appear in evidence, the attorney of the company dictated the form in which the instrument now appears, and, upon its being written out and exhibited to the plaintiff, he said, "I am not going to sign that unless it is all right so that I have my right to recover in a suit against the Nickel Plate Company." This he repeated several times, and Mr. Delano, Mr. Dawes, and Mr. Connell all assured him that was understood, and that the paper would carry out his intentions, and his right to sue the Nickel Plate Company would be preserved, if he signed the document; that all the company wanted was an agreement not to sue the company, leaving the plaintiff whatever rights he might have against the Nickel Plate Company; that the $1,200 was to be paid for an agreement not to sue the Burlington Company; and thereupon the plaintiff read the whole of the paper, and signed and delivered it, and the money ($1,200) was paid. Upon the conclusion of the evidence the court directed a verdict for the defendant, which ruling, upon proper exception and assignment of errors, is here for review.

Frank Hamlin, for plaintiff in error.
William J. Calhoun, for defendant in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

It is well settled that one injured by the act of several joint tort feasors may sue one of them, or any number less than the whole of them, or all of them. It is also settled that as there is but one injury there can be but one satisfaction. If, therefore, the injured person receives satisfaction from one of the joint tort feasors, or executes a release, that satisfaction and release operate as a bar to an action against the others, because the cause of the action is satisfied, and no longer exists. With respect to a technical release under seal of one of several joint tort feasors, the law indulges the absolute presumption that the injured person has received full compensation, and is therefore barred of an action against the other wrongdoers. It must therefore be shown in such an action that the injured party has received such full compensation, or what he accepted as full compensation, or that he has released one of the wrongdoers by technical release under seal. The instrument here in question is one under seal, and it may not be denied that some of the language therein contained indicates a complete accord and satisfaction for the injuries received by the plaintiff in error, while, on the other hand, there are expressions contained in it which indicate to the contrary. The first part of the document is in the form of an account or bill against the Chicago, Burlington & Quincy Railroad Company for the sum of $1,200 "for amount agreed upon in full settlement of all claim, demand, or causes of action whatever which J. W. O'Shea may have or ever has had against the Chicago, Burlington & Quincy Railroad Company, * * * account of or growing out of an accident which occurred at or near Loomis St. crossing of said railroad company's tracks, Chicago, Ills., on or about December 29, 1894, at which time, while on duty as switchman on a N. Y., C. & St. L. train, said O'Shea was supposed to have been struck and injured by post of gate tower. In full settlement for any and all injuries resulting from said accident." The remainder of the document consists, first, of a receipt of the sum of money mentioned "in full payment of the above account." Then follows, "in consideration of the payment of said sum of money," a covenant never to sue the Chicago, Burlington & Quincy Railroad Company for any debt, claim, or demand whatever which O'Shea ever had or now has against that company, whether arising upon contract or upon tort. This document is an accord and satisfaction coupled with a covenant never to sue. There are upon the face of the paper certain indicia of an intention of O'Shea not to accept the sum stated in full satisfaction of his injuries. Thus, in the statement that it is for the amount agreed upon in full settlement of all claims and causes of action against the Burlington Company, there follows this expression, "but not the New York, Chicago & St. Louis

Railroad Company." The agreement is written upon one of the printed blanks of the Burlington & Quincy Company, which contains in print a general release, and the words, "remise, release, and forever discharge," are erased in red ink, and the words, "covenant never to sue," substituted, and the words, "of and from all," are likewise erased, and the words, "for any," substituted. The inquiry naturally arises, if this document was designed as a full satisfaction for the injury, why should the New York, Chicago & St. Louis Railroad Company be excepted, and why should a covenant not to sue be substituted for a technical release? It may not be denied, we think, that, if this agreement must stand as it was executed, the expression, "but not the New York, Chicago & St. Louis Railroad Company," must be held to be of no force, being repugnant to the legal effect and operation of the instrument (Gunther v. Lee, 45 Md. 60; Delong v. Curtis, 35 Hun, 94; Seither v. Traction Co., 125 Pa. St. 397, 17 Atl. 338, 4 L. R. A. 54), which declares that O'Shea has received full settlement for all injuries resulting from the accident in question. The oral testimony allowed at the trial, under objection of the defendant in error, clearly establishes that it was not intended by either party to the paper that the sum of $1,200 should be paid to O'Shea in full satisfaction of his injuries, and that it was not intended by either party that the document which O'Shea was to sign should be anything more than a covenant not to sue the Chicago, Burlington & Quincy Railroad Company, that company being willing to give the sum stated in the paper as a consideration for that covenant. In other words, the paper does not express the actual agreement of the parties. The question then arises whether such oral testimony was admissible. We think that it was. The rule that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument" was not adopted because the document is under seal. That mode of attesting a written instrument as the deed of a party was employed because, at the time of its adoption, most men, even of the higher classes of society, could not write. There is popularly supposed to be some special sanctity to a seal. It was a solemn and deliberate act of the parties, expressing their assent to the agreement declared in the paper sealed. The seal, now that men can write, has not the sanctity and authority formerly given to it. See Lowe v. Morris, 13 Ga. 150. The rule was adopted "because the contract itself is plainly and intelligibly stated in the language of the parties, and is the best possible evidence of the intent and meaning of those who are bound by the contract and of those who are to receive the benefit from it." Stackpole v. Arnold, 11 Mass. 31. And this rule of exclusion is applied to simple contracts in writing to the same extent and with the same exceptions as to specialties or contracts under seal. Id. But this rule, as stated by Mr. Greenleaf on Evidence (section 279), "is applied only in [suits] between the parties to the instrument, as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained. It cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in

the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties, and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others." See, also, Whart. Ev. 923. In a suit between a party and a stranger, neither is concluded by the contract, but either may give evidence differing from it. Lee v. Adsit, 37 N. Y. 78; McMaster v. Insurance Co., 55 N. Y. 222; Lowell Mfg. Co. v. Safeguard Fire Ins. Co., 88 N. Y. 591; Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292; Iron Co. v. Greene, 31 C. C. A. 477, 88 Fed. 207; Reynolds v. Magness, 24 N. C. 30; Dunn v. Price, 112 Cal. 46, 44 Pac. 354.

The question then arises whether the defendant in error here was a "stranger" to this agreement in the sense in which the term is employed in the rule. It is true that the subject-matter upon which the agreement operated was the joint wrong of the two railway companies, and the defendant in error could avail itself of an accord and satisfaction or release between O'Shea and the Chicago, Burlington & Quincy Railroad Company. To this extent it may be said not to be a stranger to the matter, but it was no party to the contract, and was not bound by it. If the writing had been simply a covenant not to sue the Chicago, Burlington & Quincy Railroad Company, would it not have been open to the defendant in error to prove that the paper did not express the truth; that what purported to be merely a covenant not to sue was, in fact, an accord and satisfaction for the injury? The estoppel must be mutual, and both must be bound or neither. If the right of a stranger to, vary a written contract by parol is limited to rights which are independent of the instrument (Wodock v. Robinson, 148 Pa. St. 503, 24 Atl. 73), then it is clear that in the case supposed the defendant in error would be bound by the writing, although it did not express the agreement of the parties to it. It must be admitted that the authorities are not at one, and that the cases of Brown v. City of Cambridge, 3 Allen, 474, Goss v. Ellison, 136 Mass. 503, and Railroad Co. v. Sullivan (Colo. Sup.) 41 Pac. 501, hold to the contrary, overlooking, we think, that the rule of exclusion does not apply between a party to the contract and a stranger, and improperly assuming that a joint tort feasor is a party to the contract. We are of opinion that the plaintiff in error should have been permitted to show the real agreement, and that the question should have been submitted to the jury whether the written paper expressed the actual contract of the parties. The judgment is reversed, and the cause remanded, with directions to award a new trial.