[Civ. No. 2907. Second Appellate District, Division Two.—June 7, 1919.]

## LORENZO FOSTER LUCKIE, Respondent, v. DIAMOND COAL COMPANY (a Corporation), Appellant.

[1] NEW TRIAL—APPEAL—SUFFICIENCY OF EVIDENCE.—An order granting a motion for a new trial upon the grounds specified in the notice of intention, except upon the grounds of insufficiency of evidence, as to which grounds said motion is denied, eliminates, on appeal from said order, the question of the sufficiency or insufficiency of the evidence to justify the verdict.

[2] MOTOR VEHICLE ACT—DUTY OF COMPLIANCE WITH.—The Motor Vehicle Act imposes the duty of complying with the requirements of the act upon the owner only when he is in control of the motor vehicle, personally or through his servant, and imposes that duty upon some other person when such other person is operating the vehicle and it is "under his control."

[3] ID.—OPERATION OF TRUCK BY INDEPENDENT CONTRACTOR—VIOLATION OF ACT.—Where a truck is in the possession of a given person as lessee, and such person, while using the truck as an independent contractor and not as a servant of the owner thereof, fails to comply with some provision of the Motor Vehicle Act, no knowledge, actual or imputed, of such noncompliance with the act can be attributed to the owner, and, therefore, it cannot be said that the latter "allowed" such violation of the requirements of the act.

[4] MASTER AND SERVANT—AUTOMOBILE ACCIDENT—ACTION FOR DAMAGES—RELATION BETWEEN DEFENDANT AND OPERATOR—EVIDENCE.—In an action for damages for personal injuries sustained in an

---

3. Person employed in connection with automobile as independent contractor, note, Ann. Cas. 1918C, 653.

automobile accident, alleged to have resulted from the negligence of defendant's servants, the nature of the relation between the defendant and the person who was in possession and control of the truck at the time of the accident must be determined not alone from the terms of the contract of employment, but from the subsequent conduct of each, known to and acquiesced in by the other.

[5] CONTRACTS—VARIATION OF TERMS—ADMISSIBILITY OF PAROL EVIDENCE.—In an action between a party to a contract and a third party, the rule that parol evidence cannot be received to contradict or vary a written contract does not apply.

[6] MASTER AND SERVANT—CONTRACTUAL RELATIONSHIP—CONSTRUCTION BY PARTIES.—It is competent for one sued as a master for the negligence of his alleged servant, where a written contract between them bears evidence of that relation, to show that, as a matter of fact, he and his alleged servant, by their conduct, put a different construction upon their contract and treated each other as contractee and independent contractor.

[7] ID.—STATUS OF PARTIES—OBJECT OF EMPLOYMENT.—Where the essential object of the employment is the performance of the work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done.

[8] ID.—ACTION FOR DAMAGES FOR PERSONAL INJURIES—RELATIONSHIP OF PARTIES.—In this action for damages for personal injuries sustained in an automobile accident, alleged to have resulted from the negligence of defendant's servants, the person in possession and having control of the automobile was not the servant of the defendant, but an independent contractor, for whose negligence defendant was not responsible.

[9] ID.—RIGHT OF EMPLOYER TO TERMINATE EMPLOYMENT—EFFECT OF.—Because the contract of employment between the owner of a truck and the driver thereof, who was buying the truck under a conditional sale contract, gives the former the right to terminate it at any time it might choose to do so, it does not necessarily follow that the relation between them is that of master and servant.

---

8. Liability of master for negligence of independent contractors, note, 76 **Am. St. Rep.** 382.

8. Liability of owner of automobile for acts of his chauffeur or agent, notes, Ann. Cas. 1917D, 1001; Ann. Cas. 1916A, 659; Ann. Cas. 1914C, 1087; 12 Ann. Cas. 972; 10 Ann. Cas. 732.

8. Responsibility of owner of automobile when operated by servant or another for his own pleasure or business, notes, L. R. A. 1916A, 957; 47 L. R. A. (N. S.) 662; 37 L. R. A. (N. S.) 834; 33 L. R. A. (N. S.) 79; 26 L. R. A. (N. S.) 382; 21 L. R. A. (N. S.) 93; 14 L. R. A. (N. S.) 216; 9 L. R. A. (N. S.) 1033; 1 L. R. A. (N. S.) 235.

[10] ID. — RESPONDEAT SUPERIOR — APPLICATION OF DOCTRINE. — The doctrine of *respondeat superior* applies only where the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong, at the time and in respect to the very transaction out of which the injury arises.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Louis W. Myers, Judge. Reversed.

The facts are stated in the opinion of the court.

Harry A. Hollzer, J. Crider, Jr., and Guy Le Roy Stevick for Appellant.

Delphin M. Delmas for Respondent.

FINLAYSON, P. J.—Defendant appeals from an order granting a new trial after a verdict in its favor.

The action is for the recovery of damages for personal injuries sustained in an automobile accident, alleged to have resulted from the negligence of defendant's servants. Whether the persons whose negligence caused the accident were the servants of defendant or of one whom defendant claims was an independent contractor, is one of the principal questions presented.

[1] The order granting the new trial is as follows: "The motion of plaintiff for a new trial herein is hereby granted, upon the grounds specified in the notice of intention filed herein, except upon the grounds of insufficiency of evidence, as to which grounds said motion is denied." The language of the order eliminates from consideration here the question of the sufficiency or insufficiency of the evidence to justify the verdict. (*Kauffman* v. *Maier*, 94 Cal. 270, [18 L. R. A. 124, 29 Pac. 481]; *Siemsen* v. *Oakland etc. Ry. Co.*, 134 Cal. 494, [66 Pac. 672]; *Higgins* v. *Los Angeles Gas etc. Co.*, 159 Cal. 651, [34 L. R. A. (N. S.) 717, 115 Pac. 313].) Though respondent, had he elected to do so, could have presented to this court any good reason, disclosed by the record, why there should be an affirmance of the order appealed from, other than as to the sufficiency of the evidence, he has chosen to limit his attempted vindi-

cation of the order to alleged error in giving and refusing certain instructions. Respondent's brief here consists of a printed copy of his oral argument in the lower court upon his motion for a new trial. From this it appears that the sole grounds there urged why a new trial should be granted, which are likewise the sole grounds here urged as reasons why the order should be affirmed, are that the court erred in giving the instructions complained of, and in refusing the requested instructions. It will be assumed, therefore, that there was no other valid ground for a new trial. So that, if none of the grounds urged by respondent in his brief be tenable, the order should be reversed. (*Piercy* v. *Piercy*, 149 Cal. 163, [86 Pac. 507].)

On the evening of December 16, 1914, more than a half hour after sunset, in the city of Los Angeles, an automobile, in which plaintiff was riding as a passenger, collided with a heavy auto truck, known as a Gramm truck, on which was the sign "Diamond Coal Company." The truck was in charge of one Terry, as driver, assisted by one Cunningham, as helper. It was standing on Sunset Boulevard, near the corner of that thoroughfare and Alvarado Street. Upon approaching the corner, Terry and Cunningham discovered that the light, known in common parlance as the "tail light," had gone out. It was a stormy, rainy night. Failing to light a match in the blustering wind, Terry secured an ordinary hand lantern which was regularly carried on the truck, took it to a near-by garage, lit it, and hurried back. As he approached the truck with the lighted lantern the automobile in which plaintiff was being carried as a passenger, traveling on Sunset Boulevard in the same direction that the truck had been going, collided with the rear end of the truck, resulting in the injuries to plaintiff.

At the time of the accident the truck was in the possession and control of one Foulks, under a written lease from defendant, or conditional sale contract, bearing date June 20, 1914. Contemporaneously with the execution of this lease, defendant and Foulks had entered into another written agreement, hereinafter referred to as the "contract of employment," wherein defendant is referred to as the first party and Foulks as the second party, and which, so far as is necessary to an understanding of the questions here presented, after reciting that defendant is desirous of securing

the services of an auto truck and driver, and that Foulks, as the lessee of the Gramm truck, is desirous of securing a steady and permanent contract for the employment of himself and his truck, provides as follows: ''That said second party shall use and drive said auto truck in the service of said first party, at least ten hours per day of each working day, continuously until all claims said first party has against second party for payments on lease of said Gramm . . . truck have been satisfied. . . . Second party will furnish all gasoline, oil and grease necessary in the operation of said auto truck, and will prudently use, care for and keep same in good order and repair. . . . In case the truck is held up for repairs for more than one hour of any working day, the time which said truck is held up in excess of one hour shall be deducted. . . . The entire responsibility for the operation of the truck and for any damage to the truck or to persons or property through its operation shall be with the party of the second part, who alone shall be held responsible. . . . Said second party shall at all times keep said auto truck insured against personal liability and fire. . . . Payment by first party to second party shall be made $275 per calendar month, from which shall be deducted $175 one month and $150 the succeeding month (amounts alternating each month), said amounts so deducted to be applied first on the payment of rental and interest of Gramm Truck and second on the purchase price of the Garford Truck.'' The Garford truck referred to in this agreement was another auto truck which originally was owned by defendant, but which it had sold to Foulks, though the purchase price had not been paid at the date of this new arrangement. Upon this Garford truck defendant, early in the year 1914, had taken out a state license under the state Motor Vehicle Act.

At the same time that defendant and Foulks entered into their written contract of employment, they executed their lease or conditional sale contract whereby defendant leased the Gramm truck to Foulks. This agreement, which was also in writing, declares that Foulks agrees to pay defendant, as rental, a certain sum for the Gramm truck, in equal amounts of $125 per month on the twentieth day of each month to and including April 20, 1916, and a further sum, in certain monthly installments, for the Gar-

ford truck and for certain items for repairs and insurance. The agreement further provided that, ''When said hirer shall fail to pay said rentals or said interest or any part thereof, in the manner and at the time above specified, or fail to keep or perform any of the agreements or conditions contained in this contract, or whenever said Coal Co. shall think it necessary in order to be secure against loss, although no breach of this contract has been committed by said hirer, with or without legal process, the said Coal Co. may demand, take and repossess said Auto Truck [the Gramm truck], notwithstanding anything herein contained.'' It was further agreed that Foulks, at his expense, should pay all state, county, and city taxes and licenses, and keep the auto truck insured against liability and fire to an amount not less than $2,750. Then follows a provision to the effect that if Foulks shall perform all the conditions of the lease and make all payments, he shall have the privilege of purchasing the Gramm truck from defendant for one dollar, and, upon the execution of a bill of sale, title should vest in him.

At or about the time when the written agreements were executed the metallic plate upon which was inscribed the license number for the Garford truck was transferred to the Gramm truck and remained fastened thereto up to and including the time of the accident. This, presumably, was done or caused to be done by defendant in conformity with the requirements of section 8 of the state Motor Vehicle Act of 1913 (Stats. 1913, p. 643).

Defendant's sole right to the Gramm truck was by virtue of a lease to it under a written conditional sale contract with one Colyear, by whom the truck was owned in the first instance, and who had executed to defendant a conditional sale contract similar, *mutatis mutandis,* to that which defendant gave to Foulks.

Foulks had an independent calling. He was in the transfer and delivery business. In that business he used auto trucks. He testified that, at the time of the accident, and in connection with his business, he was making deliveries for persons other than defendant. He hired the driver Terry and the helper Cunningham. He kept the Gramm truck on his brother-in-law's premises when it was not in use. Though defendant insured the truck, Foulks paid the

premium by permitting defendant to deduct it from his monthly wage. Foulks, after ascertaining on the morning of each day where the various deliveries were to be made, selected the routes of travel. Terry received his orders from Foulks, and no one else; and whatever Foulks said to Terry the latter did.

The court, of its own motion, after giving correct definitions of the terms "servant" and "independent contractor," and stating that if Foulks was an independent contractor and Terry and Cunningham were his servants and not defendant's, plaintiff could not recover, instructed the jury that if the written agreements were signed and delivered by the parties thereto, the law presumes that they were delivered on the day they bear date, to wit, June 20, 1914, that they are genuine and not sham, and were in force prior to and at the time of the accident; and that these presumptions, while satisfactory if uncontroverted, are not conclusive. The court further instructed the jury that if they found that these written agreements were genuine and in force at the time of the accident, and that, in carrying them out, Foulks selected and hired the men who were in charge of the truck at the time of the accident, fixed their duties and had sole control over the details of their work, and that, at that time, they were performing some duty for Foulks, then the plaintiff would not be entitled to recover. Also that if the jury found that, under and by virtue of the contract relations between defendant and Foulks at the time of the accident, the latter was in the employ of the defendant for the purpose of using the truck in making deliveries for defendant, at such times and to such places as it should direct, and that he had the right to determine and control the manner or method and details of the operation of the truck in making such deliveries—being responsible to the defendant only for the making of deliveries at the time and places designated by it, but not for the method of making the same—and that Foulks had the right to operate the truck either by himself or, at his election, through some other person whom he might select and employ for that purpose, and that at the time of the accident Terry had been so selected and employed by him, and was then operating the truck under his direction and control, as to the manner of its operation, then Foulks was an inde-

pendent contractor, and Terry was not the servant of defendant, but was the servant of Foulks, and defendant would not be responsible for any negligent act or omission of Terry. Respondent contends that in giving these instructions the court erred.

Plaintiff requested, but the court refused, an instruction to the effect that the only right which the defendant acquired under the contract of employment between itself and Foulks was that of an employer of Foulks and the Gramm truck; that the duty of carrying a red light on the rear of a motor vehicle is imposed as a condition of the ''license or privilege'' of operating such vehicle upon the public highways of the state; and that responsibility for its neglect cannot be avoided by authorizing another person than the licensee to operate it. The court likewise refused an instruction, requested by plaintiff, instructing the jury, as a matter of law, that the relation created between defendant and Foulks by the written contract of employment was that of master and servant and not that of contractee and independent contractor. Respondent claims that in refusing to give these requested instructions, the court committed error.

For the reasons stated at the beginning of this opinion, the order granting the new trial must be reversed unless at least one of the grounds expressly assigned in this court by respondent for its affirmance is tenable.

To support his claim that the court erred in refusing the requested instructions and in giving those which it gave of its own motion, respondent contended in the lower court, as he does here: 1. That because the truck was registered under the state Motor Vehicle Act in defendant's name, as owner and licensee, it is liable, even if Foulks were an independent contractor; 2. That Foulks was a servant merely and not an independent contractor; and 3. That the court erroneously left it to the jury to construe the documents and determine therefrom whether Foulks was a servant or an independent contractor.

To maintain his contention that, because the license on the Gramm truck was issued in appellant's name, presumably upon its application therefor, the latter is liable, regardless of whether Foulks was appellant's servant or an independent contractor, respondent claims that where the public

has given to a licensee the privilege of using the public highways, such licensee is liable for any injury resulting from the omission of any statutory duty imposed as a condition to the right to enjoy the privilege—citing in support of this principle, among other cases, *Lee* v. *Southern Pacific Ry. Co.,* 116 Cal. 97, [58 Am. St. Rep. 140, 38 L. R. A. 71, 47 Pac. 932]. If this position be tenable, then the owner of a licensed automobile who may have loaned it for the day to a friend is liable for any injuries proximately caused by the friend's negligence in failing to observe any one of the numerous requirements of the Motor Vehicle Act. If this be the law, then, harsh as it may be, *ita lex scripta est,* and there is nothing to do but enforce it. Is it the law? We think not.

Foulks was in possession of the truck under a conditional sale contract between himself and defendant, just as defendant, in its turn, under a similar contract with Colyear, had the right of possession as between itself and Colyear. We shall assume, however, that defendant, and not Foulks, was the "owner" of the truck within the meaning of the Motor Vehicle Act (section 1 of the act, Stats. 1913, p. 640) ; also that, as such owner, it was obliged to, as it in fact did, apply for and receive a license (section 3 of the act, Stats. 1913, p. 641) ; and that it was defendant who caused the license plate to be affixed to the Gramm truck. It is provided by the Motor Vehicle Act that "Every motor vehicle . . . while in use shall carry during the period from a half hour after sunset to a half hour before sunrise, . . . at the rear . . . a lighted lamp exhibiting one red light" (section 13 of the act, Stats. 1913, p. 645). The act, however, does not impose this duty upon the owner and licensee regardless of whether he or someone else be in control of the vehicle. It is this that differentiates this case from those relied upon by respondent. The language of the act, is: "No person shall *allow* a motor vehicle owned by him or *under his control* to be operated . . . in violation of the provisions of this act." (Section 19 of the act, Stats. 1913, p. 646. The italics are ours.) **[2]** We think it evident that, by the use of the alternative "owned by him *or* under his control," the legislature intended to impose the duty of complying with the requirements of the act upon the owner when, and only when, he is in control of

the motor vehicle, personally or through his servant, and to impose that duty upon some other person—a friend to whom the vehicle may have been loaned, for instance— when such other person is operating the vehicle and it is "under his control." Aside from this consideration, the language of the act is that "no person shall *allow*," etc. This word "allow" materially limits the obligation of the owner, or the person in control, as the case may be. To allow is to acquiesce in or tolerate. Knowledge, express or implied, is essential before one may be guilty of either. (*Sawyer* v. *Mould,* 144 Iowa, 185, [25 L. R. A. (N. S.) 602, 122 N. W. 813].)    [3]    The truck was in the possession of Foulks as lessee; and if, at the time of the accident, Foulks was using the truck as an independent contractor and not as a servant of defendant, no knowledge, actual or imputed, that the tail light was out could be attributed to defendant; and in that case it could not be said that defendant had "allowed" any violation of the provisions of the Motor Vehicle Act. If defendant did not "allow" any violation of the requirements of the act, it was not remiss in the due performance of any duty imposed upon it as a licensee of the state.

[4]    Both of respondent's remaining points, assigned by him as reasons for the affirmance of the order, appear to be grounded upon the assumption that the nature of the relation between defendant and Foulks at the time of the accident must be determined solely from the written agreements, particularly the written contract of employment. We think this an erroneous assumption. We think that the nature of Foulk's relation to defendant at the time of the accident, whether that of an independent contractor or servant, must be determined not alone from the terms of the written contract of employment, but from the subsequent conduct of each, known to and acquiesced in by the other.

We are not interested in the contracts between defendant and Foulks, or the right of either to enforce the same, save in so far as such contracts may afford evidence as to the nature of the true relation between them at the very time of the accident. For here the vital question is: What, at the time of the accident, was the actual relation between defendant and Foulks? Was their relation, at that time,

that of contractee and independent contractor, or master and servant? Regardless of what may have been their written agreement six months before the accident, they unquestionably had the right to rescind it, or, by express verbal consent or by conduct mutually acquiesced in, wholly to disregard it, or to modify it, and create the relation of contractee and independent contractor, if, originally, their relation had been that of master and servant. So that if, with or without the written agreement, defendant, at the time of the accident, had the right to control and direct Foulks in respect to the manner in which the work was to be done, then the relation of master and servant existed. And, conversely, if, with or without the written agreement, defendant, at the time of the accident, did not have the right to control and direct Foulks in respect to the mode and manner in which the work should be done, the latter was an independent contractor, for the negligence of whose servants defendant would not be liable.

We do not think that the relation of master and servant, and none other, is conclusively established by the written contract of employment. But even if it were, that would not prevent the parties from changing that contractual relation and establishing another. Where the parties to a written contract of employment, by mutual consent inferred from their subsequent conduct, have modified their contract and have acted upon it as thus modified, it is valid, in the modified form, to the extent and during the period it was so acted upon and carried out. As between a third party and either party to the contract, such change or modification unquestionably could be shown by parol. [5] In an action between a party to a contract and a third party, the rule that parol evidence cannot be received to contradict or vary a written contract does not apply, as the estoppel on which the rule rests must be mutual, and, since the third person is not bound by the contract as written, neither is his adversary in the action. Strangers to the contract are at liberty to show that the written instrument does not disclose the full or true character of the relation between the contracting parties. And if a stranger to the contract be thus at liberty, when contending with a party to the contract, the latter must be equally free to show the true relation between himself and the one with whom he

has contracted. Both must be bound by this conventional rule of law, or neither. (*Dunn* v. *Price*, 112 Cal. 46, [44 Pac. 354].) Accordingly, it has been held that, in an action of this character, while, *prima facie*, the relation of the parties to a written contract of employment is that which is expressed by the terms of their writing, nevertheless, in order to determine their true relation, such contract should be considered in view, not only of the circumstances under which it was made, but of the conduct of the parties while the work is being performed. (*Klages* v. *Gillette-Herzog Co.*, 86 Minn. 458, [90 N. W. 1116].) It is competent for the plaintiff in such an action to show that, as a matter of fact, the parties to a written contract creating the relation of contractee and independent contractor had put a different construction upon it by their conduct, and that the defendant has in fact exercised a supervision and control over the work in its details inconsistent with the presumed character of the other party to the contract as an independent contractor. (*Powell* v. *Virginia Construction Co.*, 88 Tenn. 692, [17 Am. St. Rep. 925, 13 S. W. 691]; *Klages* v. *Gillette-Herzog Co.*, supra; 1 Bailey on Personal Injuries, sec. 39.) **[6]** This being the rule, the converse must be equally true; and it is competent for one sued as a master for the negligence of his alleged servant, where a written contract between them bears evidence of that relation, to show that, as a matter of fact, he and his alleged servant, by their conduct, put a different construction upon their contract and treated each other as contractee and independent contractor. For these reasons we hold that the nature of the relation between defendant and Foulks at the time of the accident was not determinable solely from the written contract of employment, but from all the evidence in the case, particularly that which bore upon the question as to whether, at that time, defendant was assuming the right to control and direct Foulks respecting the manner in which the work should be executed by him. As to this the evidence was conflicting. We hold, therefore, that whether defendant and Foulks were, respectively, master and servant or contractee and independent contractor, was a mixed question of law and fact, and that it was for the jury to determine, under proper instructions, the real relation of Foulks to defendant at the time of the accident.

(*Greenberg* v. *Western Turf Assn.*, 148 Cal. 126, [113 Am. St. Rep. 216, 82 Pac. 684]; *Brophy* v. *Bartlett*, 108 N. Y. 632, [15 N. E. 368].) This is precisely what the court did. And if all the evidence in the case—that *aliunde* the writings as well as the writings themselves—was sufficient to justify a finding that the relation between defendant and Foulks was that of contractee and independent contractor, respondent cannot complain that this question, as a mixed question of law and fact, was left to the jury to determine. That there was sufficient evidence to justify such a finding, we have no doubt.

[7] The accepted doctrine is that, where the essential object of the employment is the performance of work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done. (Labatt on Master and Servant, sec. 64; *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807, [159 Pac. 721].) "The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." (*Green* v. *Soule*, 145 Cal. 96, 99, [78 Pac. 337, 339].) He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details. The legal test for the determination of the question is stated by Thompson as follows: "An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants." (1 Thompson on Negligence, secs. 621, 622.)

Foulks exercised an independent occupation. He was, to use his own words, in the transfer and delivery business. There was evidence that defendant did not exercise, or assume the right to exercise, any authoritative control over Foulks as to how his truck should haul the loads. Foulks determined what route the deliveries should take. Terry and Cunningham were his servants. Defendant exercised

no control over them or the truck, so far as the driving or method of taking the loads to their destination, or the general care of the truck and its equipment, were concerned; nor did it assume to exercise any. It did not hire the driver or helper, and had no power to discharge them. The driver and his helper were paid by Foulks with his money; though it seems that at times the money for one or the other of these men was furnished by defendant, but the evidence shows that this was done as a matter of accommodation to Foulks. We think there is ample evidence to sustain a finding that Foulks represented defendant only as to the result of the work his truck did—the delivery of the loads at their respective destinations—and not as to the manner of the performance of the work. The driver of the truck and his helper, by delivering the loads, caused them to be dumped in heaps at their respective destinations. This, in its essence, was a "result," as much as if, being a building contractor, Foulks had orderly arranged steel, brick and mortar so as to produce a stately structure. [8] Upon the facts as above stated, Foulks was not the servant of defendant, but an independent contractor, for whose negligence defendant was not responsible. (*Burns v. Michigan Paint Co.*, 152 Mich. 613, [16 L. R. A. (N. S.) 816, 116 N. W. 182]; *Foster v. Wadsworth*, 168 Ill. 514, [48 N. E. 163]; *Jahn's Admr. v. McKnight & Co.*, 117 Ky. 655, [78 S. W. 862]; *Driscoll v. Towle*, 181 Mass. 416, [63 N. E. 922]; *Western Indemnity Co. v. Pillsbury*, 172 Cal. 807, [159 Pac. 721].)

Respondent argues that Foulks was a servant and not an independent contractor because: (a) Under the lease contract or conditional sale agreement between Foulks and defendant, the latter had the right at any time, and for no reason other than its own untrammeled will, to terminate the lease contract and thus, indirectly, terminate the contract of employment; and (b) the contract of employment provides for the personal services of Foulks in that it requires him to drive the truck.

The contract of employment did not expressly give to defendant the right to discharge Foulks. Nor did the other contract—the so-called lease contract—give to defendant the right to terminate the lease of the truck merely because the manner whereby Foulks was performing his con-

tract of employment might not be satisfactory to defendant. The so-called lease contract provides that it might be terminated by defendant if the latter shall deem it necessary to do so in order to secure it against loss, that is, loss under that particular contract. [9] However, even if the contract of employment had given defendant the right to terminate it at any time it chose to do so, it would not necessarily follow that the relation between it and Foulks was that of master and servant. Though the fact that a contract provides that the employer may discharge the other party at any time is a circumstance that may be considered in determining the relation, and, in a doubtful case, may become an important circumstance, still it is not a controlling factor. It is not a "master fact"—it does not lead necessarily to the conclusion that the person employed to do work is not an independent contractor. (*Gall* v. *Detroit Journal Co.*, 191 Mich. 405, [158 N. W. 36]; *New Albany etc. Rolling Mill* v. *Cooper*, 131 Ind. 363, [30 N. E. 294]; *Thomas* v. *Altoona etc. Ry. Co.*, 191 Pa. St. 361, [43 Atl. 215].) For failure satisfactorily to accomplish the results contracted for, a contractee may discharge the contractor. Yet such right to discharge the contractor does not necessarily give the contractee the right to interfere with the manner the contractor may choose to use to accomplish the results contracted for.

Assuming, though not conceding, that the written contract of employment contemplated that Foulks should personally drive the truck, the fact remains that Foulks did employ others to drive it and deliver the loads; that these other persons received their orders and directions, as well as their pay, from him and not from defendant; and that defendant acquiesced in this course of conduct. And even if Foulks himself had been required to drive the truck, it would not necessarily follow that he was a servant and not an independent contractor. (See *Gall* v. *Detroit Journal Co., supra.*) The fact is there were many circumstances adduced at the trial, none of an absolutely controlling nature, but each pointing to the character of the employment—some squinting at the relationship of master and servant and others at that of contractee and independent contractor. For this reason different and discordant inferences were deducible from the attending circumstances, so

that the question became one for the jury, under proper instructions.

[10] Furthermore, the doctrine of *respondeat superior* applies only where the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong, at the time and in respect to the very transaction out of which the injury arises. Foulks was in possession of the truck as lessee, or purchaser under a conditional sale contract. Upon him alone, under the terms of his contract with defendant, rested the obligation to take care of, house, and repair the truck. At the time of the accident the truck, which had been in a repair shop for certain repair work, was being taken from the repair-shop to the place where Foulks habitually kept it overnight. At that time the truck was not being used in the service of defendant. At that time Foulks was the only master in whose business the driver and his helper were engaged.

Order reversed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1919.

All the Justices concurred.