Littleton,
dissenting: Whether the amount paid or accrued was intended as a dividend or as interest must be determined from the intention of the parties. An analysis of the document set out in the findings of fact and the evidence presented at the trial convinces me that the $250,000 was intended as a loan and that the 14 per cent per annum was intended as interest for the use of the $250,000.
Section 201 (a) of the Revenue Act of 1921 defines “ dividends ” as any distribution made by a corporation to its shareholders or members, whether in cash or in other property out of its earnings or profits accumulated since February 28, 1913.
*869 The Commissioner no doubt assumed that the amount paid to F. C. Austin in 1921 was a dividend, because the written agreement calls it a dividend. No dividend was ever declared. The Syndicate applied the earnings from its property for the first six months of 1921 to the payment of taxes due for the preceding year, debts, insurance and repairs. Certain of the obligations for repairs, etc. were deferred and the earnings for the balance of the year were paid to Austin for the use of the money advanced to the Syndicate.
An analysis of article III of the'agreement discloses that it does not provide for the payment of any dividend on first preferred shares, except in the case of redemption, and that the first preferred shares held by Austin shall be subject to redemption as a whole on July 1, 1922, upon payment thereof plus a dividend at the rate of 14 per cent per annum from the date thereof to the date of payment ; that such redemption may be made either from money accruing to the Syndicate from rents in excess of expenditures, from money borrowed by the Syndicate, or from money furnished by the second preferred and common shareholders, as provided in article XIII. It does not provide for payment of these dividends out of earnings from profits alone. It provides for payment out of borrowed money or for the payment out of the money furnished by other shareholders when there are no profits. Although there were no rents or profits and no money was available as provided in articles III and XIII of the agreement, Austin, under the terms of the agreement, could take possession, sell the property, and reimburse himself for his advancement, plus 14 per cent per annum. He was not dependent upon the earnings or profits for the return of his principal or interest.
Austin had agreed to loan the Syndicate $250,000 at 14 per cent per annum. He knew that the Illinois statutes limited the legal rate of interest to 7 per cent per annum. He feared that some of the members of the Syndicate might object to the 14 per cent per annum and he concluded that the agreement prepared by his attorney should be accepted by the Syndicate to protect him in this matter. It was not his intention to invest the $250,000 at the risk of the enterprise. He had already subscribed $50,000 at the risk of the business and there is no question about that; he was paid neither interest nor a dividend on the $50,000.
The Commissioner contends that we can not inquire beyond the written instrument upon which the transaction was based, but this rule does not apply in proceedings of this character. Peugh v. Davis, 96 U. S. 332; Sigua Iron Co. v. Greene, 88 Fed. 207; O’Shea v. New York C. & St. L. R. R. Co., 105 Fed. 559; Mitchell v. McShane *870 Lumber Co., 220 Fed. 878; Appeal of J. W. Solof, 1 B. T. A. 776; Appeal of Converse & Co., 1 B. T. A. 742. The law seems to be well settled that oral evidence is admissible to explain a document where usury is exacted. Houghton v. Burden, 228 U. S. 161, 169; Clemens v. Crane, 234 Ill. 215; 84 N. E. 884.
We have the uncontradicted testimony of three witnesses, parties to the transaction, that the money advanced by Austin to the Syndicate was a loan on which the Syndicate agreed to pay interest at the rate of 14 per cent per annum monthly and that the 14 per cent was in fact interest. Thirty-five thousand dollars interest accrued upon this loan and $29,166.65 was paid during 1921. Canceled checks were offered in evidence showing these payments. The Syndicate agreement says nothing about payments in the year 1921, and yet we find that payments were regularly made and received by Austin. This indicates that it was the oral and not the written instrument that controlled the nature of the transaction.
It is not always easy to distinguish between an investment and a loan, or what is dividend and what is interest. The general rule is that whenever a person who advances money is guaranteed the return of his money plus interest so that his principal is never in jeopardy then the transaction is a loan. When one advances money for a business enterprise, depending upon the hazards of the business as to whether he will receive the return of his principal or receive any profit thereon, he becomes a shareholder in the transaction. Austin was guaranteed the return of his money advanced with interest at 14 per cent per annum. This is disclosed not only by the documents set out in the findings of fact but also by testimony submitted at the trial. Looking to the terms and legal effect of the document, and taking into consideration the oral and documentary evidence offered, I am of opinion that the transaction was a loan and not an investment, and that $35,000 which the Syndicate agreed to pay annually in monthly installments was interest and not a dividend. The first preferred certificates issued by the Syndicate to Austin were merely evidence of indebtedness.
KorNek, Green, and Teusssll concur in the dissent.