## Appeal of CONVERSE & CO.        Docket No. 570.

A written instrument on its face an absolute conveyance of property can be shown to be a mortgage only by clear and conclusive evidence. On the facts in this appeal, *held*, that the property involved was not given as security for an indebtedness.

Submitted January 19, 1925; decided March 16, 1925.

*J. B. Lynch, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the fiscal years ended May 31, 1918, and May 31, 1919, in the amounts of $109,307.43 and $20,-795.78, respectively. The entire amount of taxes is not in controversy, but only so much thereof as arises from the disallowance by the Commissioner of a portion of a deduction taken by taxpayer in determining its net income for the fiscal year ended May 31, 1918, on account of a debt alleged by it to have been ascertained to be worthless and charged off in that year. A hearing was held and the appeal submitted on the pleadings, stipulations by the parties, and the evidence, from which the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation, organized under the laws of New York, with its principal office at 88 Worth Street, New York City. It was during the year 1909, and has been at all times since, engaged in conducting a cotton goods commission business.

2. During the years 1909 to 1912, the taxpayer made large advances of money to and in behalf of R. B. MacLea Co., a corporation conducting a dry goods business in New York City, on merchandise purchased by that company. By October 1, 1912, the amount of the indebtedness was $385,561.46. About that time the R. B. MacLea Co. was reported to be in financial distress and the taxpayer, in order to protect its lien on the goods on account of which the advances had been made, against other creditors of the MacLea Co., and to avoid a loss of the money advanced to that company, entered into negotiations with it, as a result of which the following written contract was entered into by and between the taxpayer and the R. B. MacLea Co. on October 30, 1912:

Agreement between Converse & Company, a corporation organized under the laws of the State of New York, party of the first part, and R. B. MacLea Company, a corporation organized under the laws of the State of New Jersey, a party of the second part.

Whereas, the parties hereto have had business relations under various agreements and arrangements since February 10, 1909, and

Whereas, it is their intention herein to cancel all previous agreements, arrangements and obligations each to the other, and to express their final and sole agreement herein.

Now, therefore it is agreed by the parties hereto for mutual consideration the receipt whereof is hereby acknowledged, and for their mutual covenants and promises herein contained, as follows:

*First:* R. B. MacLea Company will immediately transfer to and vest complete and absolute title in Converse & Company to all merchandise, both foreign and domestic, grey, converted or otherwise, on which merchandise Converse & Company have made advances to R. B. MacLea Company. This transfer to be considered by the parties as full payment for all advances made by Converse & Company to R. B. MacLea Company.

*Second:* To facilitate the sale and disposition of said merchandise, R. B. MacLea Company will immediately deliver to Converse & Company accurate copies of all last inventory stock sheets, and of all books of account, papers and all other memoranda as well as samples and patterns that may be necessary for said sale and disposition. R. B. MacLea Company will furnish such further information to Converse & Company as may be necessary for the purpose herein.

*Third:* Converse & Company hereby assume and agree to pay the liabilities, immediately, as rendered, specified herein, and to hold R. B. MacLea Company harmless therefrom.

Said liabilities are—

| | |
|---|---:|
| To Reade & Wall | $3,279.73 |
| To R. B. MacLea Company | 5,851.15 |
| To Simpson & Godlie | 14.51 |
| To S. Steiner & Company | 6,972.27 |
| To R. B. MacLea Company (for expenses and disbursements to Dec. 31, 1912) | 6,029.10 |
| Sundries to December 31st, 1912 | 361.25 |
| Total | 22,508.01 |

*Fourth:* Converse & Company will immediately consign all foreign goods and merchandise transferred herein to any responsible banker designated by R. B. MacLea Company, under an agreement whereby said goods shall be disposed of as directed by and under the management and control of R. B. MacLea Company, and whereby said R. B. MacLea Company shall receive a ten (10%) per cent sales commission, and whereby there shall be provided a banker's commission not to exceed two and one-half (2½) per cent.

It is further agreed that said banker shall be designated within 30 days from the date of this agreement and that Converse & Company shall have the right to be specified in such consignment agreement, to withdraw all unsold portion of said consignment after December 30th, 1913.

*Fifth:* The parties hereto hereby cancel and terminate all previous agreements and arrangements made by them and hereby mutually release each other of and from all agreements, obligations and liabilities whatsoever except the obligations specified in the agreement herein and the due performance thereof.

*Sixth:* This agreement shall be binding on the successors and assigns of the parties hereto.

*In witness whereof,* this agreement is executed in duplicate by the respective parties hereto, this 30th day of October, 1912.

CONVERSE & COMPANY,

By (signed)        FREDERICK K. RUPPRECHT,
                                                    *President.*

Attest:

    (Signed)        HENRY H. DEHLS,
                                                    *Secretary.*

R. B. MACLEA COMPANY,

By (signed)        R. B. MACLEA,
                                                    *President.*

Attest:

    (Signed)        HUGO IBACH,
                                                    *Secretary.*

The intention of the parties to the contract, at the time it was executed, as to whether it was a sale of merchandise or a transfer thereof as security for a debt, is expressed by the testimony of the attorney, who prepared the contract and saw it signed by the proper officers of the two corporations. He testified as follows:

On October 30, I attended at the office of Converse & Co., the same gentlemen as before, Messrs. Rupprecht, the president of the company, Mr. Downes,

the vice-president, Col. Todd, the treasurer, and Mr. Wise, the other director. I then went with Mr. Downes and Col. Todd to the office of Mr. MacLea and I met Mr. MacLea for the first time then. I presented the contract to Mr. MacLea and stated to him in the presence of Col. Todd—I think Mr. Downes had gone down stairs after the introduction—that this contract was on its face an absolute transfer of this merchandise, but I stated the reason of that was for your protection and for the protection of Converse & Co., so that if there is any claim of creditors that there should be no question on the face of the paper that this merchandise is the property of Converse & Co., and it is understood that you understand, and we talked the whole proposition over, and that after this merchandise had been disposed of, and after they had received back the money advanced and the expenses that the balance will be turned over to you, and he said " that is quite all right, and I under stand that."

He further testified as to the nature of the instrument that:

It was an absolute transfer of the goods, on the face of the instrument, and it was intended to be so, in order to protect the parties as against the claims of creditors, and if it had been recorded as a chattel mortgage then it could not have answered the purposes desired.

Within two or three years subsequent to October 30, 1912, the R. B. MacLea Co. was liquidated, but taxpayer did not participate or attempt to participate in the liquidation, and it did not at any time after October 30, 1912, assert or attempt to assert any claim as a creditor against the R. B. MacLea Co. The R. B. MacLea Co. did not give to taxpayer notes or other evidence of indebtedness, and paid no interest on the amount claimed to be due.

Under the contract set forth, the taxpayer took possession of the merchandise of the R. B. MacLea Co., on which it had made advances, and moved it to its own storehouses. No inventory was made of this merchandise when it came into taxpayer's possession, nor were inventories made at any time thereafter to determine what portion of the merchandise remained unsold at the end of each year. The goods taken over were worth an amount in excess of the indebtedness. From time to time, subsequent to the acquisition of this merchandise, the taxpayer, in order to facilitate the sale thereof, converted part of it, and also purchased new goods, necessary to fill out broken lots, to keep up the line or replace colors sold, at a total cost of $696,487.96. All of the merchandise, both old and new, was sold during the period October 30, 1912, to May 31, 1918, the total amount of sales being $795,897.90. The selling expense was $29,642.72, making a total expenditure by the taxpayer on account of advances, conversion of merchandise taken over from the MacLea Co., purchase of other merchandise and selling expenses, of $1,111,744.14. From that amount the taxpayer subtracted the amount of sales and determined a loss on the transaction of $315,-846.24. In computing its net income for the fiscal year ended May 31, 1918, the taxpayer deducted the amount of $315,846.24 as a debt ascertained to be worthless and charged off within the taxable year.

The Commissioner treated the contract, hereinabove set forth, as a sale by the R. B. MacLea Co. to the taxpayer of the merchandise referred to therein, and determined that the loss of $315,846.24 sustained by the taxpayer was a trading loss, growing out of the purchase and sale of merchandise. However, as taxpayer had no inventories showing the amount of the merchandise on hand at the beginning and end of the several taxable years between October 30,

1912, and May 31, 1918, the Commissioner allocated the loss to those years, in the proportion that the amount of sales in each year bore to the total amount of sales, and determined that there is a deficiency in tax for the fiscal years ended May 31, 1918, and May 31, 1919. The deficiency letter was mailed to the taxpayer September 9, 1924. The petition was filed November 8, 1924.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRAMMELL: The only issue raised by the pleadings in this case is whether the taxpayer, in computing its net income for the fiscal year ending May 31, 1918, should be allowed to deduct as a debt ascertained to be worthless and charged off within the taxable year $315,846.24, which it lost as a result of the transaction outlined above. At the hearing the taxpayer also raised the point that even if the contract of October 30, 1912, between the taxpayer and the R. B. MacLea Co., be held a contract of sale, the Commissioner erred in allocating the loss to the years 1913 to 1918, in the proportion that the amount of the sales in each year bore to the total sales. The Commissioner contended that the contract was a conveyance to taxpayer of the merchandise referred to therein in settlement of an account due, and that the loss of $315,846.24 was sustained over the period October 30, 1912, to May 31, 1918, from trading operations on merchandise purchased for sale, as well as on the merchandise acquired under the contract. The taxpayer contended and offered testimony to show that the written instrument executed on October 30, 1912, by it and the R. B. MacLea Co., was not, as it purports on its face to be, a sale of merchandise but is and was intended as a conveyance of merchandise to taxpayer merely as security for a debt, and that, the security having been extinguished in the year 1918, the debt became worthless and was properly charged off in that year.

Counsel for the Commissioner objected to the admission of this testimony on the ground that the instrument is free from any ambiguities and speaks for itself, and that its terms can not be varied or changed by parol evidence. We think the testimony is competent and admissible. *Peugh* v. *Davis*, 96 U. S. 332. The rule against varying or contradicting writings by parol evidence obtains only in suits between and is confined to parties to the writing and their privies and has no operation with respect to third persons nor even upon the parties themselves in controversies with third persons. *Sigua Iron Co.* v. *Greene*, 88 Fed. 207; *O'Shea* v. *New York, C. & St. L. R. Co.*, 105 Fed. 559; *Mitchell* v. *McShane Lumber Co.*, 220 Fed. 878.

It is true, as claimed by counsel for taxpayer, that a written instrument on its face an absolute conveyance of title to property may be shown by parol evidence to be, in fact, merely a mortgage or security for a debt. However, the burden of establishing that the intention of the parties thereto was different from that which the instrument

purports, is upon whoever alleges it, in this case the taxpayer, and must be established by clear and conclusive evidence. *Ensign* v. *Ensign*, 120 N. Y. 655; 24 N. E. 942. In that case it was stated by the court as follows:

The burden of establishing an oral defeasance to such a deed is an onerous one, resting on whoever alleges it, and its existence, and also its precise terms, must be established by clear and conclusive evidence; otherwise the strong presumption that the deed expresses the entire contract between the parties to it is not overcome. A conveyance of land in fee, so executed, acknowledged, and recorded, is of too great solemnity, and of too much importance, to be set aside, or converted into a mere security, upon loose or uncertain testimony; and it will not be, unless the existence of the alleged oral defeasance is established beyond a reasonable doubt.

We are not satisfied from the evidence in this case that the instrument executed by the taxpayer and the R. B. MacLea Co. was, as is now claimed, only intended to be a contract for the conveyance of certain property to taxpayer as a pledge or security for the payment of a debt. The evidence that there was a contemporaneous oral agreement which modified and changed the terms of the written instrument is not definite and unequivocal, and we would not be warranted in holding that it is sufficient to overcome the strong presumption that the written instrument expresses the entire contract between the parties. It appears from the testimony that, as to creditors of the MacLea Co., the written contract was to operate as an absolute conveyance of property, but that it was agreed by the parties orally that, if the property should subsequently be sold for more than the amount of the MacLea Co.'s debt to the taxpayer, plus selling charges, the taxpayer would pay the MacLea Co. the amount of such excess. In other words, as between the parties the agreement was to have the effect of a mortgage or pledge, but as to creditors it was to be considered a conveyance. If it was a conveyance in fact and truth, it was such for all purposes, but the evidence is that it was to be considered as such for the purposes of creditors only. If it were to be given that effect and considered by the parties as a conveyance for that purpose, it can not be held that it was something else for another purpose after the parties have obtained the benefit of it with respect to creditors.

Considering all the evidence in the light of the actions and conduct of the parties, we think that the contract was for the absolute conveyance of title to merchandise. The taxpayer took the merchandise in question and commingled it with other merchandise. It took no notes or other evidence to show that the MacLea Co. was indebted to it, and when the MacLea Co. liquidated and went out of business a few years later the taxpayer did not assert or attempt to assert any claim as a creditor. It took no interest in the liquidation of that corporation. If the indebtedness had not been paid by the conveyance of the merchandise as the contract provided, Converse & Co. was still a creditor. Having security for a debt does not change the relationship of debtor and creditor, yet the taxpayer had no evidence of indebtedness against the MacLea Co. subsequent to the date of the written instrument referred to and neither received nor charged any interest. There is no evidence that the goods received from the MacLea Co. were its entire assets or that the corporation

was insolvent, nor is there any evidence that the indebtedness would not have been paid in full if a claim had been filed when that company was liquidated. If that company had been insolvent, the agreement which the parties contended to be a conveyance as to creditors and a mortgage or pledge as to themselves would doubtless have been held to have been merely a scheme to hinder and delay creditors. The fact that the taxpayer did not present a claim when the MacLea Co. was liquidated is evidence that it had no claim against it at that time. This is in accordance with the specific language of the written instrument herein quoted, which provides that all obligations against the MacLea Co. were canceled and released.

There appeared nothing to distinguish the goods purchased by the taxpayer from the MacLea goods. When goods were sold there were no means of separating pledged goods, if they were pledged, from goods owned. While it was testified that Converse & Co. treated the agreement as a pledge or security as between the parties, it is to be observed that it already had a lien on such goods which as between the parties was effectual. Its only object in securing the possession thereof as a pledge was for protection as against creditors; yet, as to creditors, the contract was considered what it purported to be, a contract for sale of goods, and as between the parties it was to remain as a pledge.

The possession of chattels creates a presumption of ownership which is sufficient until overcome by proof. 10 R. C. L. 827. The commingling of the MacLea goods with goods purchased by the taxpayer so that they became indistinguishable and inseparable creates another presumption that the taxpayer acquired the ownership thereof in accordance with the terms of the agreement.

The evidence is that the MacLea merchandise when received by the taxpayer exceeded in value the amount of the indebtedness. There is no evidence as to any extension of time for the payment of the indebtedness if the merchandise were taken as security. The debt was already past due, and the taxpayer admittedly had the right to sell the goods at any time, whether they were given as security or in payment of the debt; yet as goods were sold the taxpayer acquired other goods to keep up the line and to replace colors sold, and continued to sell and buy goods over the period of approximately six years. In acquiring other goods the taxpayer expended $696,487.96. These facts would indicate that the taxpayer acquired the title to the MacLea merchandise and engaged in trading operations.

The amount of the deduction claimed as a debt ascertained to be worthless was arrived at by subtracting from the total cost of merchandise, which amounted to approximately $1,111,000, of which amount approximately $385,000 was the merchandise received from the MacLea Co., the total sales amounting to $799,877.90. The entire amount of the loss incurred in buying and selling merchandise over the period from 1912 to 1918 was attributed to the debt due by the MacLea Co. on the theory that it was necessary to acquire the other goods and to extend the sales transactions over that period in order to collect the amount of the indebtedness due from the MacLea Co. It is clear, however, that the entire amount of the losses incurred over this period was not a debt due by the MacLea Co. which was ascertained to be worthless.

The MacLea Co. did not owe anything in excess of $385,561.46. The expenditures made and losses incurred in carrying on trading operations on other goods greatly exceeded the MacLea indebtedness and should not be added to its account, if any indebtedness in fact existed after the receipt by the taxpayer of the MacLea merchandise.

It follows from what has been said that the loss of $315,846.24 sustained by the taxpayer was not on a debt ascertained to be worthless and charged off in the taxable year ended May 31, 1918, but was a loss incurred in trade or business over the entire period from October 30, 1912, to May 31, 1918, inclusive. The taxpayer was, therefore, not entitled to deduct that amount in computing its net income for the fiscal year ended May 31, 1918.

With respect to the second issue raised by the taxpayer, we conclude that the action of the Commissioner should be approved. The taxpayer kept no inventories of the merchandise acquired from the R. B. MacLea Co., or of the other merchandise purchased and sold in connection therewith. It is, therefore, impossible to determine accurately the actual loss in any one year, and, under the circumstances, we are of the opinion that there is no fairer or more equitable solution of the problem, both to the taxpayer and the Government, than to allocate the loss to the several taxable years, included in the period October 30, 1912, to May 31, 1918, in the proportion that the amount of sales in each year bore to the whole amount of sales. That is what the Commissioner has done.