156 So. 859

## GREAT ATLANTIC & PACIFIC TEA CO. v. DONALDSON.

### 6 Div. 587.

Court of Appeals of Alabama.
April 3, 1934.

Rehearing Denied June 5, 1934.

Foster, Rice & Foster and J. G. Madison, all of Tuscaloosa, for appellee.

J. L. Drennen, of Birmingham, and H. A. & D. K. Jones and Aubrey Dominick, all of Tuscaloosa, for appellant.

SAMFORD, Judge.

The plaintiff was an invitee riding in an automobile which at the time was being driven along Tenth street in the city of Tuscaloosa by one Robert Smith. Near the intersection of Colonial drive and Tenth street there was a collision between the car in which plaintiff was riding and a truck belonging to, and being driven by, Eugene Hays (sometimes Hays is referred to as James and sometimes as Eugene. They are one and the same). As a result of the collision, this plaintiff was thrown from the car and seriously hurt. So much so, that the verdict rendered is ridiculously small as compensatory damages for the injuries which she sustained.

The complaint as amended is in one count, and reads: "Plaintiff claims of the defendant the sum of Two Thousand and

no/100 ($2,000.00) Dollars, as damages, for that heretofore, on, to-wit, the 2nd day of April, 1932, an agent, servant or employee of the defendant, while acting within the line and scope of his employment by the defendant, negligently ran or permitted an automobile to run upon or against an automobile in which the plaintiff was riding on or along a public highway, to-wit, 10th Street, near Colonial Drive, in the City of Tuscaloosa, Alabama, and as a proximate consequence of said negligence of said agent, servant or employee of the defendant, the plaintiff was rendered unconscious for a long period of time, to-wit, six hours, was cut about the face and chin, suffered a severe cut and lacerations and bruises upon her right leg, and was otherwise cut and bruised about her legs and body, and was caused to spend one week in a hospital, and was confined to her home for one week after leaving said hospital, and was caused to expend a large sum of money, to-wit, Thirty-two and no/100 ($32.00) Dollars, for her care and maintenance in said hospital, and was caused to expend a large sum of money, to-wit, One Hundred and no/100 ($100.00) Dollars, for the service of a surgeon and physician, and was caused to expend a large sum of money, to-wit, Ten and no/100 ($10.00) Dollars, for medicines and bandages, and was caused to suffer great physical pain and inconvenience, and to lose a long period of time, to-wit, two months, from her work, all to the damage of the plaintiff in the sum of Two Thousand and no/100 ($2,000.00) Dollars, hence this suit."

Assuming that the opinion in Ruffin Coal & Transfer Company v. Rich, 214 Ala. 622, 108 So. 600, correctly states the law, we must hold that the complaint is not subject to the demurrer.

■ This brings us to a consideration of the major question involved in this case: Was Hays, the driver of the truck, an agent, servant, or employee of the defendant acting within the line and scope of his employment at the time charged in the complaint; or was he an independent contractor, engaged in carrying out the terms of his contract with this defendant without defendant having or exercising authority over him further than to hold him responsible for the execution of his contractual obligation.

The overwhelming weight of the evidence on this question is that defendant was engaged in the retail grocery and meat business in Tuscaloosa, selling its merchandise to customers in the city to be delivered to such customers at their homes; that defendant entered into a contract with Hays to make these deliveries at stated hours during the day, he being responsible for such merchandise from the time it was delivered to him until he made delivery to the customer; whether the delivery was made by truck or other vehicle was to be determined by Hays; that for this service so rendered, Hays was to receive, and did receive, as consideration, $25 per week, to be paid weekly; that the above was the entire contract between the parties; that Hays owed no duties to defendant except to make deliveries of goods sold by others; that in carrying out his part of the contract he purchased and owned, independent of defendant, a Ford truck; that he paid for the license, which was issued in his name; that he furnished all oil and gasoline for its operation; and that he maintained said truck at his own expense. There is some evidence that on several occasions while Hays was in defendant's store waiting for deliveries he had been called on by the manager to aid in waiting on customers, and one witness, who has a damage suit pending against this defendant, testifies that he had seen Hays in defendant's store wearing an apron and assisting in waiting on customers. As to what Hays did in the store in aid of the clerks there is denied by the manager and Hays. Whether this is so or not is of no moment, as there is no evidence tending to show that such service, if it was indeed rendered, was any part of or within the contemplation of the parties at the time of or pending the contract above outlined. In other words, assuming that Hays did, in his spare time, sometimes assist defendant's clerks, the evidence is without conflict that this service was purely voluntary and without compensation and could not and did not change the terms of the contract between the parties.

■ The court in his oral charge instructed the jury: "If he was employed to deliver groceries, and if he had nothing else to do except to deliver groceries, to deliver them in his own truck, and if you are reasonably satisfied by the evidence that was all he did do, that if it was his truck, if he kept up his truck, kept up the repairs, furnished oil and gas, and that the defendant's company had nothing to do with that, but he was to merely deliver groceries, and that he had nothing else to do except that but deliver groceries, and that was all he was employed to do, and that he did nothing else than that, he would be an independent contractor," etc. Of course, if there was conflict in the testimony as to what the contract was, the question would be properly left to the jury. In the in-

stant case, however, there is no conflict in the testimony as to the terms of the contract entered into by and between defendant's district manager and Hays, which contract contemplated deliveries alone and no other service. That Hays voluntarily rendered other service not connected with or covered by the contract could not and does not change a contract for independent service into a contract of hire. Nor do we think that the occasional delivery of C. O. D. packages, where the money for same was returned by Hays to defendant, would change the status.

█ The distinguishing features of the relation of master and servant and that of an independent contractor have been the subject of so many decisions that we could not hope to add anything to the body of the law by discussing at length the distinctions involved. We think that Mr. Justice Foster, in General Exchange Insurance Corporation v. Findlay, 219 Ala. 193, 121 So. 710, 711, has tersely, accurately, and correctly stated the rule, to wit: "The relation is 'determined by whether or not the person for whom he is working "has control over the means and agencies" by which the work is done.' " This holding is sustained by many authorities there cited.

In addition to the above, we may note that in Republic Iron & Steel Co. v. McLaughlin, 200 Ala. 204, 75 So. 962, 963, it was said: "Whether one performing a service is a servant or an independent contractor is held to be determined by whether or not the person for whom he is working 'has control over the means and agencies' by which the work is done, * * * or has control over the means and agencies 'by which the result is produced.' " To be a master he must have the supreme control and direction of the servant and whose will the servant represents, not merely in the ultimate result of his work, but in all its details. Lookout Mt. Iron Co. v. Lea, 144 Ala. 169, 39 So. 1017. The opinion in the McLaughlin Case is supported by numerous cited authorities. It is the universal rule that if the employee is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor. McHarge v. M. M. Newcomer & Co., 117 Tenn. 595, 100 S. W. 700, 9 L. R. A. (N. S.) 298. In a case somewhat similar to the case at bar, and where the defendant in the case had entered into a contract with a party for the service of a truck and driver, at so much per day, the California court said: "The accepted doctrine is that, where the essential object of the employment is the performance of work, the relation of master and servant does not

exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done." Luckie v. Diamond Coal Co., 41 Cal. App. 468–480 (7), 183 P. 178, 183. In a case where an expressman was hired to move a safe, the expressman using his own methods in the removal, it was held that the expressman was an independent contractor. Hollenbach et al. v. Hardin, 205 Ill. App. 528. In New York it is held that a teamster employed to haul a load of lumber was an independent contractor. Hopkins v. Empire Engineering Corporation, 152 App. Div. 570, 137 N. Y. S. 478, 481. Also in New York it is held that where a truckman was transporting freight between defendant's factory and the freight house, under a yearly contract, he was not a servant, but was exercising an independent calling. Loughrain v. Autophone Co., 77 App. Div. 542, 78 N. Y. S. 919. To the same conclusion is the case of Kneckel v. Ryder, 170 N. Y. 562, 62 N. E. 1096, where a truckman was employed to remove paper from one floor in its warehouse to another floor; also in Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 902, 48 L. R. A. 673, where it is said: "The truckman who transports the traveler's baggage or the merchant's goods to the railroad station, though hired and paid for the service by the owner of the baggage or the goods, is not the servant of the person who thus employs him." Also to the same conclusion is the case of Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883, where the driver of an ambulance owned by defendant and bearing the name of defendant's hospital was kept at a livery stable, the stable man furnishing the horses and driver on such occasions as defendant directed and subject to the direction of defendant's surgeons. In the Hopkins Case, supra, the New York court concludes with this statement: "But it is not enough, in order to establish a liability of one person for the negligence of another, to show that the person whose negligence caused the injury was at the time acting under an employment by the person who is sought to be charged. It must be shown, in addition, that the employment created the relation of master and servant between them."

A case exactly in point is Wood v. Cobb et al., 13 Allen (Mass.) 58, where it appeared that the defendants, who were fish dealers, employed a truckman for a certain sum each Friday, to deliver fish to their customers; he in delivering same selected his own route and consulted his own convenience. The truck-

man, being sick, told his servant to get help, if necessary; and accordingly the latter procured the defendant's servant, with their assent, to drive one team and deliver fish; and he, while doing so, drove against the plaintiff, causing the injury complained of. In this case Bigelow, C. J., speaking for the court said: "It is too well settled to admit of debate that under such circumstances no liability for the acts done attached to the defendants." As strongly stated is the law in Foster v. Wadsworth-Howland Co., 168 Ill. 514, 48 N. E. 163, where there was a contract similar to the instant case. And so we might almost ad infinitum cite opinions of other courts which hold that draymen, truckmen, cartmen, etc., are regarded as independent contractors, unless there is specific evidence that control was exercised over them by the owner of the goods which were being hauled. Richmond v. Sitterding, 65 L. R. A. 468, note N; Burns v. Michigan Paint Co., 152 Mich. 613, 116 N. W. 182, 16 L. R. A. (N. S.) 816.

In the instant case the evidence was direct and positive as to the contract between Hays and the district manager of defendant, disclosing the obligation of Hays to make deliveries of goods to purchasers, to do so in his own way and with his own conveyance, he being responsible for the result, the details of delivery being left to him. This was all of Hays' duties under his contract, and such evidence that Hays occasionally gave assistance to customers and to the employees of the store would not justify an inference that in making delivery the contract had been changed from one of an independent contractor to that of a servant.

In the instant case, the evidence clearly discloses a contract between this defendant and Hays, which makes Hays an independent contractor, and therefore acts of negligence on the part of Hays, while engaged in his business under the contract, are not binding on this defendant. The rulings of the court on this question were erroneous.

The foregoing is decisive of this case and renders a further consideration unnecessary; however, we may add that in any event the verdict was contrary to the great weight of the evidence both on the question of the contract and of negligence on the part of Hays.

True, plaintiff was not precluded from her action by and on account of the negligence of Robert Smith, the driver of the car in which she was riding, but the burden rested on the plaintiff to prove negligence on the part of Hays, proximately contributing to her injury. In this she failed. While there is some evidence which, taken alone, would tend to prove negligence, the overwhelming evidence is to the conclusion that this collision was due entirely to the careless and reckless driving of Robert Smith and that Hays was free from fault. So that, even if Hays could be held to be the servant or employee of defendant acting within the line and scope of his employment, the verdict of the jury is wrong and unjust, and should not be permitted to stand.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

### On Rehearing.

In appellee's brief we are taken to task for holding that the verdict was contrary to the weight of the evidence and was therefore wrong and unjust. Let us see. There were just two disinterested witnesses to the accident; one a white woman and one a white man. Hays, the driver of the truck, is not a party to the suit, is also an eyewitness, but may be classed as an interested witness, by reason of the fact that he is still connected with defendant. The other eyewitnesses are the plaintiff, Curtis Hosea, who has a suit against defendant growing out of the same accident. Both of these witnesses are negroes and at the time of the collision were in a five-passenger Pontiac car, being driven by one Robert Smith, a negro. The collision occurred at the intersection of Tenth street and Colonial drive in Tuscaloosa; the truck was turning in from Colonial drive towards the east and had reached about the center of Tenth street on its way to the south side of Tenth street and was in second gear; it was struck at the left front wheel, which was knocked under, the fender and lamp crumpled, and the axle and chassis bent. The impact threw the truck entirely around with its front towards the west and its right wheels resting against the south curb of Tenth street on the east of Colonial drive. The Pontiac was coming west on Tenth street, was struck about the right front door which was torn open and then proceeded in the same general direction but veered to the north curb, ran "a-straddle" the hedge bushes on west about seventy-five feet across the school yard and between two pines. The whole of the accident and facts leading to it occurred within less than three hundred feet, and if the Pontiac was traveling thirty-five miles per hour the time occupied from the passage of Mrs. Johnson's car by the Pontiac to the time of the collision was less than five seconds.

If the Johnson car was going thirty miles per hour and was within fifty feet of the intersection of Tenth street and Colonial drive, at the time it was passed by the Pontiac, then the Pontiac must have been going more than thirty-five miles per hour, and from the time the Pontiac began to pass the Johnson car to the time of the collision must have been about one second. All the evidence tends to prove that when the negro, driving the Pontiac car, was passing the Johnson car, he was going more than thirty-five miles per hour; that he was on the left-hand side of the street, and when the two cars collided the Pontiac was still on the left of the center of Tenth street, when he should have been on the right. The passing of the Johnson car by the Pontiac at the place it did, on the wrong side of the street and at a speed of from thirty-five to forty miles per hour, was negligence. The testimony of the two disinterested witnesses, whose opportunity for observation was perfect, shows that the Hays truck had already entered the intersection from the right side of Colonial drive, in second gear, at a speed of eight to ten miles per hour, that at the time of the collision it was halfway across the center line of Tenth street going in the direction of the right side of Tenth street, the angle with the center line being about forty-five degrees. In the absence of any evidence tending to show that Hays saw the Pontiac, he had a right to assume that the way was clear for him to proceed. There is in this evidence given by the only two disinterested witnesses no element of negligence on the part of Hays. On the contrary, the two interested witnesses, who testify for plaintiff, say that the Pontiac car had passed the Johnson car and gotten back on the right side of Tenth street, i. e. the north side, that when the truck came from the right side of Colonial drive into Tenth street, turning left to the south side, going at full speed, that the Pontiac was going about twenty-five miles per hour, and had reached a point when the truck was halfway across the center line of Tenth street when it struck, and that the front wheels of the Pontiac were "on the South side of the center line of Tenth street and the back wheels on the North," when it struck. This is an impossible situation. If the Pontiac had passed the Johnson car and returned to the right or north side of Tenth street and the truck was halfway across the center line of Tenth street moving towards the south curb, there would have been no collision. The place at which the collision occurred and the position of the cars after the collision and the character of injury to both cars tend to corroborate the testimony of defendant's witness, to the conclusion that the collision was due to the negligence of the driver of the Pontiac and not to Hays. There is some evidence tending to show that Hays might have seen the Pontiac before he entered the intersection and that in spite of this he plunged into Tenth street at full speed, estimated at twenty-five to thirty miles per hour, which evidence, under the decisions in this jurisdiction, would prevent a directed verdict for defendant; but the overwhelming weight of the evidence and the physical circumstances convince us that the verdict is wrong and unjust and should have been set aside at defendant's motion. It becomes then the duty of the appellate court to do what the trial court should have done. Birmingham Ry., L. & P. Co. v. Owens, 135 Ala. 154, 33 So. 8; Southern Ry. Co. v. Herron, 189 Ala. 662, 66 So. 627; Southern Ry. Co. v. Lollar, 135 Ala. 375, 33 So. 32; Cudd v. Bentley, 204 Ala. 586, 87 So. 85; Eminent Household of Columbian Woodmen v. Payne, 18 Ala. App. 23, 88 So. 454; Edmonds v. Schreiber, 22 Ala. App. 24, 111 So. 755.

■■ There is another point presented by the record which perhaps should be passed upon on this rehearing. When Powell, the owner of the Pontiac car, was being examined by defendant, he was permitted, over objection and exception, to testify that, some forty-five minutes after the collision, he went to the scene and put his foot on the brake of the truck and, "It went down to the floor"; that, "When I put my foot on the brake, it felt like it would hold just a little bit." With this as a basis, this witness proceeded to testify that in his opinion the brakes were not in good condition, and that a truck running thirty miles an hour, with brakes in the condition he found them, would require a distance of one hundred feet to be stopped.

There was no further examination of the brake made by this witness to see what effect the collision had had on the brake or the rods connecting it. In other words, it is not shown that the car or the brakes were in the same condition as they were at the time of the collision, non constat the collision loosened or broke the brake connection along with the other damage done the truck. It is only when the article described is shown to be in the same condition at the time of examination as at the time of collision that testimony of its condition afterwards is admissible. Aplin v. State, 19 Ala. App. 604, 99 So. 734. Evidence of an experiment, where-

by to test the truth of testimony that a certain thing occurred, is not admissible, where the condition attending the alleged occurrence and experiment are not shown to be similar. Hisler v. State, 52 Fla. 30, 42 So. 692; Reid v. State, 68 Fla. 105, 66 So. 725. Foster, J., when a member of this court, writing to the same conclusion, observed that: "The burden is upon the party offering the evidence to show similarity in essential conditions." Spelce v. State, 20 Ala. App. 412–419, 103 So. 694, 702.

While evidence of such experiments are frequently admitted to aid the jury in having the whole picture before them in considering their verdict, such evidence should always be received with caution, and only when it is clear that the jury will be enlightened thereby. Hisler v. State, 52 Fla. 30, 42 So. 692; Martin v. State, 68 Fla. 18, 66 So. 139.

The plaintiff's witness Powell was permitted to testify, over timely objection and exception, in what distance the Hays truck could have been stopped while running twenty-five and thirty miles per hour on pavement. This was error. There was no sufficient predicate for this testimony. Powell was not shown to have been familiar with the Hays truck, nor was it shown that he ever examined the brakes on the truck before the collision and had never done more than to press down the brake pedal, after the truck had been partially demolished in the wreck.

The opinion is amplified and extended, and the application is overruled.