SHANNON, Chief Judge.
The appellant, plaintiff below, is appealing from a post-trial directed verdict against her in an action that she brought against Hardwick Stove Company, the defendant below, charging negligence in the manufacture of a stove which exploded.
The plaintiff in her complaint alleges that she rented an apartment from Lora K. Harris on October 3, 1957; that part of the equipment provided for her use in the apartment was a certain gas stove manufactured by the defendant company; that the oven control valve on the stove was manufactured by Robertshaw-Fulton Controls Company, and that the valve was assembled into the stove by the defendant; that as a direct result of the carelessness and negligence of the defendant in failing to examine and inspect the oven control valve, there was present in the oven control valve several foreign particles, being metal chips, one on the valve seat of the modulating valve and two in the modulating valve chamber, which particles impaired the function of the valve, made it defective, and thereby permitted gas to be metered to the oven in excess of the quantities the modulating valve was set for; that as a result there was permitted an excess of gas to accumulate in the oven while plaintiff was attempting to light the same; that thereby an explosion was caused from which the plaintiff received injuries. Plaintiff also charged that defendant knew, or, in the exercise of ordinary care, should have known, that the stove described had a great propensity for harm, and that, as manufactured, it was inherently dangerous to life when put to the ordinary use for which it was designed, because of the defendant’s negligent and careless failure to discover and remove the foreign particles; that it was the duty of the defendant to warn those who might come near the stove of its inherent danger, and that defendant failed to do so.
The defendant denied any negligence and also set forth affirmative defenses. At the trial, the defendant made several motions, including motions for directed verdict, on which the court reserved ruling. After a verdict against it, the defendant then filed a motion for new trial, motion for judgment notwithstanding the verdict, and motion for the court to rule on the reserved rulings on motions for directed verdict. The court ordered that the jury verdict and final judgment thereon be set aside and directed a verdict for the defendant. It is from this final judgment that the plaintiff appeals. The plaintiff has six points, but it is only necessary for the purpose of this opinion that three of them be discussed, namely: 1) whether the court erred in ruling that the test conducted by the witness, Worth, and the observations made by him as a result of his inspection of the stove were experiments, and, even if properly classified as experiments, whether the tests or experiments were admissible as evidence; 2) whether or not the court erred in ruling that there was no evidence of negligence on the part of the defendant other than the results of the tests conducted by the witness, Worth; and 3) whether or not the court erred in rejecting the evidence of design negligence and refusing the plaintiff’s re *809 quest to amend her pleadings to permit the introduction into evidence of design negligence.
The stove in question was manufactured in 1951 and was sold to Florida Public Utilities Corporation of West Palm Beach and was by them sold in December, 1951, to the owners of the apartment in which the explosion occurred. It was checked for leaks before it left Florida Utilities Corporation and again checked for leaks when it was installed. It was used without any service calls or complaints to the Florida Public Utilities Corporation until after the accident occurred on or about May 23, 1958. Immediately after the accident it was checked by the Fire Chief of the town of Palm Beach, and it was checked again by a service man of Florida Public Utilities Corporation on May 28, 1958. Neither inspection produced any results. A registered engineer made a general examination of the stove and concluded that it was not operating properly and recommended that it be sent to a laboratory for a thorough examination. He recommended the Applied Research Laboratory at Miami, Florida, where the stove was subsequently sent by the plaintiff. James Worth, chemist and president of the Laboratory; checked the stove to see if there were any leaks in the gas line. He discovered two leaks, one in or around the b/ig inch connection (compression fitting) on the rear of the oven control valve, and the other in or around the oven control valve itself. The first was continuous in nature and the second was intermittent. Upon finding these two leaks, Worth disassembled the oven control valve and inspected it. He discovered three metal chips in the modulator valve (a part of the oven control valve). These metal chips were baked onto the oven modulator valve in a mass of resin and tar. A spectograph analysis was performed on these chips and they were found to be composed of the same metal alloy as the stove manifold. The modulator valve inside the oven control valve was discovered to be scored and pitted in several places. It was the opinion of this witness that, based) upon his findings, other metal chips from* the manifold had been forced into the ovem control valve, scored the modulator valve and finally worked through the valve leaving small grooves through which gas could leak, and that gas leaking through the scored modulator valve and the rear compression fitting of the oven control valve caused the explosion. In the test or experiment Worth admitted using pressure which amounted to one pound or a thirty inch water column, whereas, the actual pressure in use in Palm Beach, where the stove had been operating, was one-quarter pound or a five and one-half inch water column. No test of the stove 'under the one-quarter pound pressure in use at Palm Peach was made. So, it was undetermined the amount of air that leaked under any pressure or how long at any pressure it would take for the combustible mixture to leak into the oven. The three pieces of metal did not cause the leaks and nothing else of any kind was found in the valve except some scoring on the valve cock. Air or gas pressure could also have unseated the valve cock* permitting gas to escape, but neither of the plaintiff’s witnesses made any experiment to determine how much pressure the partic-' ular valve would take to be unseated.
The immediate question is whether or not there was a leak, and, if so, what was the negligence on the part of defendant seven years before when the stove was manufactured. We can see that the purpose of having the stove tested or experimented upon was to determine if there was a leak, and, if so, to determine the cause So, the plaintiff was then relegated to proving a leak through the medium of expert testimony. For the purpose of making the test, the plaintiff had to show a certáin similarity at, the time of the tests and at the time of the explosion.
In Palm Beach, where the stove was operating at the time of the explosion, there was used one-quafter pound pressure or a five and one-half- inch water column. *810 This fact was unknown to the expert witnesses of the plaintiff at the time the tests were made, and the amount of air pressure used by plaintiff’s witness was one pound or a thirty inch water column. This was five or six times the pressure under which the stove was operating at the time of the explosion. There was a great dissimilarity between what pressure was used at the point of explosion and what pressure was used on the plaintiff’s experiments. The deciding cases do not permit this, as indicated by 2 Jones on Evidence, 5th Ed., p. 867:
"Proof of an experiment, having been proffered for the purpose of showing that an alleged result is the consequence of a certain act or operation which is considered to exist in the case, should not be permitted unless the condition and circumstances attending the experiment are shown to have been similar to those which in fact existed in the case.”
The rule is almost universal that in testing the conditions must be substantially the same. See Hisler v. State, 1906, 52 Fla. 30, 42 So. 692, 695, where our Supreme Court stated:
“ * * * Evidence of an experiment whereby to test the truth of testimony that a certain thing occurred is not admissible, where the conditions attending the alleged occurrence and the experiment are not shown to be similar. The similarity of circumstances and conditions go to the admissibility of the evidence, and must be determined by the court. If, in the discretion of the trial court, such proffered evidence is rej ected, the appellate court will not review the ruling, unless an abuse of discretion appears. * * * Evidence of this kind should be received with caution, and only be admitted when it is obvious to the court, from the nature of the experiments, that the jury will be enlightened, rather than confused. In many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful, rather than helpful. * * * ”
Likewise, in the recent case of Huff v. Belcastro, Fla.App.1961, 127 So.2d 476, 479, the Third District Court of Appeal said:
“ * * * (I)t must be shown that the experiment was made under conditions substantially similar to those which prevailed at the time of the accident and the determination of the similarity of the circumstances and conditions must be left to the sound discretion of the trial court, subject to review only for abuse. * * * ”
Other cases which adhere to the same rule are: New York Life Ins. Co. v. Alman, 5 Cir., 1927, 22 F.2d 98, certiorari denied 277 U.S. 586, 48 S.Ct. 433, 72 L.Ed. 1000; Great Atlantic & Pacific Tea Co. v. Donaldson, 1934, 26 Ala.App. 179, 156 So. 859, certiorari denied 229 Ala. 276, 156 So. 865; Sonoma County v. Stofen, 1899, 125 Cal. 32, 57 P. 681; Skelly Oil Co. v. Jordan, 1939, 186 Okl. 130, 96 P.2d 524; Ragan v. MacGill, 1930, 134 Or. 408, 292 P. 1094, 72 A.L.R. 860; Tuite v. Union Pac. Stages, Inc., 1955, 204 Or. 565, 284 P.2d 333. See also, 20 Am.Jur., Evidence, Sec. 756; and 13 Fla.Jur., Evidence, Sec. 303.
The defendant in his brief has pointed to a great many dissimilarities, such as: 1) a lapse of four months between the explosion and the experiment, during which time the stove was in use by the plaintiff; 2) instead of testing it with inflammable gas in the apartment before disconnecting the stove from the gas system to which it had been attached for seven years, the stove was disconnected, removed from the apartment, placed on a truck, and transferred seventy odd miles to Miami; 3) the thread end of the gas *811 manifold that connected to the gas pipe system of the apartment building had hard resin deposits inside of it, which of necessity had to be broken when the pipe was disconnected. It could be seriously argued whether or not any test could thereafter be made which would determine whether or not the resin had caused the scratching or the unseating of the valve. Doubtless the court could list other dissimilarities, but we do not think it necessary, as the dissimilarity in the air pressure, and the other dissimilarities indicated, are, to this court, sufficient.
We find that the trial court did not abuse its discretion in determining that it had improperly held, during trial, that the expert’s opinion was admissible.
The court agrees with the defendant as to the second point raised by plaintiff. The court’s order on defendant’s motion for directed verdict was, as defendant says in his brief, based on two premises; first, there was no proof of a leak except as was contained in the testimony of Mr. Worth as a result of the experiment he performed; without a leak the damages sustained by the plaintiff could not be connected or related to the Hardwick Stove Company irrespective of any other evidence in the case, because the explosion would have had to result from some other cause over which Hardwick had no control or for which the defendant was not responsible; and second, even if the experiment had been admitted in evidence, from which the jury might have concluded there was a leak, the plaintiff failed to establish the negligence charged in the complaint.
Other than the experiment which the court had ruled out, we look in vain for any chargeable negligence of the defendant in regard to a leak. There is then no proof of a leak other than the proof of the expert following his test.
The plaintiff has advanced Roettig v. Westinghouse Electric and Manufacturing Co., D.C.1944, 53 F.Supp. 588. However, in the Roettig case the facts are not similar to the facts presented here. In that case, Westinghouse, the manufacturer, was sued for the explosion of an electric stove. An expert witness testified that there were four possibilities for the cause of the explosion, the third of which was the presence inside a jacket of a foreign metallic body causing a contact between the coil wire and the surface on the inside of the jacket, and by process of elimination, the expert had eliminated all save this one cause and concluded that, in his opinion, the short was caused from foreign pieces of metal. Westinghouse had manufactured the element and put it together. It was then placed into and made a part of the electric stove. The only way foreign particles of metal could have gotten into the element in the Roettig case was in the manufacturing process. In the normal operation of the stove in the instant case, gas passed through the valve in question. The trial court found that the “ (p) laintiff’s own witnesses testified that the metal chips found could not have caused a leak. Plaintiff’s theory was that since these chips had gotten in the valve, other substances or pieces of metal might have gotten in, during assembly of the stove seven years before, and caused scratches in the valve, thus resulting in a leak. A jury cannot be allowed to engage in such speculation. There was no evidence showing any negligence of Defendant, Harwich Stove Company, to be the proximate cause of the accident. * * * ” Having concluded that the evidence regarding the experiment conducted on the stove was properly found by the trial court to be inadmissible, we hold that there is no evidence upon which a jury could lawfully have found the defendant guilty of negligence. See Swilley v. Economy Cab Co. of Jacksonville, Fla.1951, 56 So.2d 914; and Manganelli v. Covington, Fla.App.1959, 114 So.2d 320.
The plaintiff has alleged that the trial court erred in rejecting the plaintiff’s *812 request to amend her pleadings to permit the introduction into evidence of design negligence. As we have seen, the complaint was not based on negligence in design. It undertook to prove liability under an entirely different theory, as evidenced by the language of the complaint.
The plaintiff, in her brief, takes the position that it is within the issues tried, or, if it is not, the case of Robbins v. Grace, Fla.App.1958, 103 So.2d 658, 660, allows the amendment, as in that case this court stated:
“If evidence is objected to at trial on the grounds it is not within the issues made by the pleadings, the court may authorize amendment so as to facilitate presentation of the merits of the case. ‡ * * a
In addition to the Robbins case, both sides refer to the case of Edwards v. Young, Fla.App.1958, 107 So.2d 244, 247, where this court stated:
“Since defendants objected at the first opportunity, and since they expressly stated, as a ground for their motion, that the plaintiffs had failed to prove the grounds of their amended complaint, it could not be said that the defendants had consented, expressly or impliedly, to a different ground for the action being proven or attempted to be proved by the plaintiffs. We are of the opinion that the lower court was not precluded, by the opinion of this court in Robbins v. Grace, supra, from granting a new trial on the grounds set forth in the court’s order.”
We think that both of the cited cases are correct in their application to the facts as they are given in those cases, but as to this case, we feel that they have no application, since the plaintiff cannot recover on the theory which she adopted, and the evidence does not justify a recovery on the ground of negligence in design. We will have to hold that the trial court did not abuse its discretion in granting a directed verdict for the defendant.
Affirmed.
ALLEN and KANNER, JJ., concur.