891 So.2d 1056 (2004)
GENERAL MOTORS CORPORATION, Appellant,
v.
Carl D. PORRITT, Appellee.
No. 2D02-3882.
District Court of Appeal of Florida, Second District.
November 19, 2004.
*1057 Sylvia H. Walbolt, Wendy P. Lumish, and Jeffrey A. Cohen of Carlton, Fields, P.A., St. Petersburg, for Appellant.
David M. Wiesenfeld, Fred M. Abbott, and Aaron Metcalf of Abbott & Wiesenfeld, P.A., and Carl D. Dawson of Dawson, Galant & Sulik, P.A., and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellee.
CANADY, Judge.
Carl D. Porritt brought an action against General Motors Corporation alleging that it was responsible for injuries he sustained because of manufacturing and design defects in a seatbelt that unlatched when the car in which he was riding rolled over, causing him to be ejected from the car. A jury found in favor of Porritt. General Motors now appeals from the final judgment awarding Porritt $8,201,305.80 in damages and $69,889 in costs. We reverse and remand for a new trial because of the erroneous and prejudicial admission of a videotape demonstration intended to support Porritt's expert's theory of inertial unlatching, which was not shown to meet the standards of Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and which failed to simulate accident conditions during the rollover. We find no merit in a claim by General Motors related to the spoliation of evidence.
On December 18, 1995, Porritt was riding in a 1995 Chevrolet S-10 pickup when the truck was involved in an accident. The truck collided with another car, went off the road, and rolled over. Porritt was ejected from the vehicle and suffered spinal fractures, resulting in permanent paraplegia. Porritt filed suit, claiming that he was wearing his seatbelt at the time of the accident. He alleged that either a manufacturing or design defect in the seatbelt buckle caused it to unlatch in the rollover. General Motors denied these claims and asserted that Porritt was not wearing a seatbelt during the accident and that the seatbelt was not in its original condition.
Evidence at trial showed that the seatbelt in the truck was a "single retractor continuous loop" seatbelt assembly. This type of seatbelt assembly contains a length of webbing (the belt), which is looped between the vehicle floor and an anchor along a pillar. A latch plate is attached to *1058 the webbing, which locks into a buckle attached to the vehicle floor. Porritt's expert witness, Dr. Charles Benedict, opined that the seatbelt buckle was defective because it was subject to "inertial unlatch." He testified that inertial unlatch can be caused by two things in a rollover: either the occupant's hip mashes against the buckle or the impact forces of the vehicle landing on its wheels cause inertia, resulting in a partial unlatch.
In support of his inertial unlatch theory, Dr. Benedict presented a videotape showing how a buckle can be caused to release when struck by a hammer or a hand. In the first group of tests, Dr. Benedict used a metal clamp to partially depress the pushbutton. He then struck the buckle against an open hand or the edge of a table, causing it to release. In the second group of tests, Dr. Benedict partly depressed the pushbutton with a toothpick. He then conducted tests where he struck the buckle with a mallet or against an open hand to release the buckle. He did not measure the forces exerted on the buckle in these tests, nor did he attach webbing to the seatbelt in either test. However, Dr. Benedict claimed that the clamp and toothpick simulated forces applied in the accident.
General Motors did not object to Dr. Benedict's expert testimony but did object to the presentation of the videotape on the grounds that the tests were not generally accepted in the scientific community under Frye and because the tests did not replicate real world conditions. General Motors' experts testified, and Dr. Benedict admitted, that the National Highway Traffic Safety Administration describes these types of tests as "parlor tricks" because they do not simulate real world conditions. They also testified that researchers in the field have rejected such testing because it does not simulate the conditions of a rollover. The trial court ruled that, although the tests "sound pretty hokey" and might not meet the Frye test, the videotape could be shown to the jury. After the videotape was played, the court admitted it as substantive evidence.
Under the Frye test for scientific reliability, the proponent of the evidence bears the burden to prove the general acceptance of the underlying scientific principle and the testing procedure used to apply that principle to the facts of the case. Castillo v. E.I. Du Pont De Nemours & Co., 854 So.2d 1264, 1268 (Fla.2003); Ramirez v. State, 810 So.2d 836, 844 (Fla.2001). In determining whether to admit scientific evidence, the trial court must hold an evidentiary hearing and make a decision of law that the particular scientific principle or the testing procedure at issue is generally accepted by the relevant scientific community. Brim v. State, 779 So.2d 427, 434 (Fla. 2d DCA 2000). Here, the trial court erred by allowing the videotape to be presented to the jury without making such a determination.
The appropriate standard of review of an issue involving the admissibility of scientific evidence under Frye is de novo. Hadden v. State, 690 So.2d 573, 579 (Fla.1997). Our review of the evidence reveals that Porritt failed to show that a "clear majority" of the members of the relevant scientific community ascribe validity to the tests as a methodology of proving that inertial unlatching occurs. Brim, 779 So.2d at 433 (quoting People v. Guerra, 37 Cal.3d 385, 208 Cal.Rptr. 162, 690 P.2d 635, 656 (1984)).
Further, where testing is offered as evidence, the conditions in an experiment must be substantially similar to those at the time of the occurrence for evidence of the experiment to be admitted. See Morton v. Hardwick Stove Co., 138 So.2d 807 (Fla. 2d DCA 1961). The determination *1059 of the similarity of the circumstances and conditions is left to the sound discretion of the trial court. Id. at 810. "In many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful, rather than helpful." Id. (quoting Hisler v. State, 52 Fla. 30, 42 So. 692, 695 (1906)); see Lytle v. Ford Motor Co., 696 N.E.2d 465 (Ind.Ct.App.1998) (excluding similar tests seeking to demonstrate inertial unlatch because they ignored web tension).
General Motors points to various conditions in the test that were not shown to have occurred during the rollover. First, the buckle was struck with a hand or a mallet. Second, the pushbutton was partially depressed by foreign objects such as a toothpick or a bracket. Third, no webbing was affixed to the latch plate. Finally, a belted surrogate or a dummy was not used in a vehicle. We agree that because the conditions of the tests were not shown to be substantially similar to those during the rollover, the videotape evidence was inadmissible. See Am. Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981). Dr. Benedict's tests were misleading and prejudicial as to the causation element of Porritt's claims.
Relying on Pierce v. State, 718 So.2d 806 (Fla. 4th DCA 1997), Porritt argues that Dr. Benedict's tests were merely a demonstrative aid and, as such, were not subject to a Frye analysis. However, as General Motors argues, Dr. Benedict's tests were not merely shown to the jury as a demonstration; they were admitted over objection as substantive evidence. Porritt's counsel also relied on the tests during closing argument to suggest that they supported Porritt's claim. In addition, the tests were shown to be inadmissible not only under Frye, but also because they lacked probative value, having been done under dissimilar conditions. See Husky Indus., Inc. v. Black, 434 So.2d 988, 993 n. 8 (Fla. 4th DCA 1983) (referring to the "rule which makes results of experiments conducted under dissimilar circumstances inadmissible").
We therefore hold that the trial court abused its discretion in admitting the videotape into evidence. "[A] judge cannot simply `use his discretion to decide that despite a plain lack of substantial similarity in conditions he will, nevertheless, admit the evidence.'" State v. Arroyo, 422 So.2d 50, 53 (Fla. 3d DCA 1982) (quoting Love v. State, 457 P.2d 622, 628 (Alaska 1969)). Because the videotape was highly prejudicial "it is reasonably probable that a result more favorable to [General Motors] would have been reached if the error had not been committed." Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979). The improper admission of the videotape thus "resulted in a miscarriage of justice" which requires that the judgment be reversed and that a new trial be conducted. § 59.041, Fla. Stat. (2003).
Reversed and remanded.
FULMER and WALLACE, JJ., Concur.